UNITED STATES of America, Plaintiff,

v.

BROWNING–FERRIS INDUSTRIES CHEMICAL SERVICES, INC., and Cecos International, Inc., Defendants.

STATE OF LOUISIANA, Plaintiff–Intervenor,

v.

BROWNING–FERRIS INDUSTRIES, CHEMICAL SERVICES, INC. and Cecos International, Inc., Defendants.

Civ. A. No. 87–317–B.

United States District Court, M.D. Louisiana.

Oct. 18, 1988.

Richard B. Launey, Asst. U.S. Atty., for plaintiff.

John B. Sheppard, Jr., George H. Cramer, II, Adm'r, Ground Water Protection Div., Louisiana Dept. of Environmental Quality, Baton Rouge, La., for plaintiff-intervenor.

Robert M. Contois, Jr., Jones, Walker, Waechter, Poitevent, New Orleans, La., for defendants.

POLOZOLA, District Judge.

This civil action was brought by the United States and the State of Louisiana against Browning–Ferris Industries Chemical Services, Inc. ("BFI") and Cecos International, Inc. ("Cecos") in connection with violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, et seq., the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., the Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq., and the Louisiana Environmental Quality Act "(LEQA"), LRS 30:1051, et seq., at the defendants' hazardous waste facility in Livingston, Louisiana. On August 12, 1988, the parties lodged a consent decree with the Court. Notice of the consent decree was published at 53 Fed.Reg. 32480 on August 25, 1988, to allow for a thirty-day period of comment on the consent decree. The thirty-day period has now expired and the United States has now moved this Court for entry of judgment.

After considering the entire record and the objections filed, the Court hereby approves the consent decree.

■ In determining whether to approve the consent decree, the Court must find that the settlement is "fair, adequate and reasonable." *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3rd Cir.1983); *Securities and Exchange Commission v. Randolph*, 736 F.2d 525, 529 (9th Cir.1984). It is clear from a careful review and analysis of the settlement agreement that the consent decree is fair, adequate and reasonable.

The consent decree requires the defendants to pay a fine of $2.0 million in civil penalties and $500,000 for an endowment fund at Louisiana State University to study hazardous waste issues in Louisiana. The decree also grants injunctive relief which will require the facility to closely monitor its treatment, storage, and disposal of hazardous waste. The defendants must also conduct an independent environmental audit to ensure it is in full compliance with the applicable environmental regulations.

Only a few comments were received during the comment period. Basically, the comments seek to have the Court give part of the money to Livingston Parish or to residents of Livingston Parish. The Court finds the comments submitted to be inappropriate for the matter pending before the Court for a number of reasons. The parties to the suit are only settling the plaintiffs' claims for past violations at the Liv-

ingston Parish facility under RCRA, the Clean Air Act, and the Clean Water Act. This settlement does not affect any other claim or potential claim that the public may have against the defendants. In short, the defendants remain potentially liable for any damage to the public health or environment as a result of their operation of the facility. Furthermore, the parties agreed to address in a subsequent proceeding whether "corrective action", i.e., the assessment and, if necessary, rehabilitation of the environment surrounding the facility will be required. The settlement agreement does not and was not intended to address this issue at this time. Moreover, the facility must also receive a permit from the State of Louisiana and the Environmental Protection Agency ("EPA") by November 8, 1988 in order to continue operating the facility after that date. In order to secure the permit, the State of Louisiana and the EPA will examine the environmental corrective measures that the facility will have to undertake in order to continue to operate. The Court has been advised that the State of Louisiana has issued a draft denial of the permit which, if finalized and upheld on appeal, will force the facility to close.

At the suggestion and recommendation of the Court, the Louisiana Department of Justice, the Louisiana Department of Environmental Quality and the defendants have agreed to donate a portion of the fine in this case to the Louisiana State University Foundation for use as research by the Institute for Environmental Studies and the Louisiana State University Law Center.[1] This is a very important aspect of this settlement. These funds will be used to study the legal and technical aspects of hazardous waste. Louisiana State University has established an Institute for Environmental Studies within the Center for Energy Studies to develop innovative technologies to monitor, treat, and reduce hazardous environmental contaminants, with a view towards alleviating state, national and international environmental contaminant problems. The funds[2] the institute will receive in this case will be used to fund research into the effects of the land disposal and alternate methods of disposal of hazardous waste upon the environment and the public health, safety and welfare with consideration of past and present land disposal practices. In addition the institute will conduct research on the following matters:

a) Consideration of the future of land and other disposal practices; and

b) Alternatives for reduction, elimination, treatment, storage and disposal of hazardous waste, groundwater considerations, and remediation alternatives.

The Louisiana State University Law Center will engage in legal research on matters involving the regulation of the generation, treatment, storage and disposal of hazardous waste, including a study of administrative laws and procedures to ensure compliance with statutory and regulatory requirements, substantive laws, rules and decisions.

Therefore, the Court finds that the proposed consent decree should be approved by the Court. Accordingly, the judgment submitted by the parties shall be signed by the Court.

## ATTACHMENT

### CONSENT DECREE

WHEREAS, Complaints were filed on April 28, 1987, by the authority of the Attorney General of the United States and at the request of the Administrator of the U.S. Environmental Protection Agency (EPA), and by the authority of the Attorney General of the State of Louisiana, representing the Louisiana Department of Environmental Quality (LDEQ), against Defendants Browning–Ferris Industries, Chemical Services, Inc. (BFI–CSI), and CECOS International, Inc. (CECOS), with re-

---

1. In accordance with the consent decree, these payments shall not be deductible for federal tax purposes.

2. Louisiana State University has also received the sum of $250,000 in the case *United States v. Borden, et al,* Civil Action 83–744–B (M.D.La.) which shall be used for the same purpose.

spect to a commercial hazardous waste disposal facility in Livingston, Louisiana which is the subject of this action; and

WHEREAS, the United States' Complaint initiating this action was brought pursuant to Section 3008(a) and (g) of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6928(a) and (g); and

WHEREAS, the State of Louisiana's Complaint was brought pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972; and

WHEREAS, pursuant to the authority of Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g), the United States' Complaint seeks the imposition of civil penalties and injunctive relief for violations of:

1. Subtitle C of RCRA [42 U.S.C. §§ 6921–6939b]; and

2. Louisiana Environmental Quality Act (LEQA), L.R.S. 30:1051 *et seq*, as well as regulations promulgated pursuant to those statutes; and

WHEREAS, pursuant to the authority of Section 7002 of RCRA, 42 U.S.C. § 6972, the State of Louisiana's Complaint seeks the imposition of civil penalties and injunctive relief for violations of:

1. Subtitle C of RCRA [42 U.S.C. §§ 6921–6939b]; and

2. The Louisiana Environmental Quality Act (LEQA), L.R.S. 30:1051 *et seq*, as well as regulations promulgated pursuant to those statutes; and

WHEREAS, pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, the Administrator of EPA has authorized the State of Louisiana to carry out the hazardous waste program in lieu of the federal program under Subtitle C of RCRA, thereby making the LEQA and the regulations promulgated thereunder as the Louisiana Hazardous Waste Management Plan (LHWMP) and the Louisiana Hazardous Waste Regulations (LHWR) (which superceded the LHWMP), requirements of the Subtitle C program and federally enforceable pursuant to Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g); and

WHEREAS, Defendants in this action have generally denied all of the allegations in said Complaints; and

WHEREAS, the Court entered a separate Consent Decree in this matter on March 18, 1988, between Defendants and Intervening Plaintiff, governing Intervening Plaintiff's allegations and claims for injunctive relief against Defendants pertaining to various groundwater and monitoring issues, which Consent Decree requires Defendants to take various actions in accordance with schedules set forth therein; and

WHEREAS, the parties, without the necessity of trial or adjudication of any issues of fact or law other than subsequent enforcement of this Consent Decree, and without any admission of liability by the Defendants, consent to the following Consent Decree resolving Plaintiff's claims and Intervening Plaintiff's remaining claims for civil penalties and injunctive relief in their respective Complaints; and

WHEREAS, the parties consent to the entry of this Consent Decree;

NOW, THEREFORE, IT IS ADJUDGED, ORDERED AND DECREED THAT:

## I.

### DEFINITIONS

Whenever the following terms are used in this Consent Decree, the definitions specified hereinafter shall apply:

1. "CAA" means the Clean Air Act, 42 U.S.C. § 7401 *et seq.;*

2. "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.;*

3. "CFR" means the Code of Federal Regulations;

4. "CWA" means the Clean Water Act, 33 U.S.C. § 1251 *et seq.;*

5. "Days" means calendar days;

6. "Defendants" means the Defendants to this action, Browning–Ferris Industries,

Chemical Services, Inc. (BFI–CSI), and CECOS International, Inc. (CECOS);

7. "EPA" means the United States Environmental Protection Agency;

8. "Intervening Plaintiff" means the State of Louisiana, on behalf of the Louisiana Department of Environmental Quality;

9. "Livingston facility" or "facility" means the commercial waste disposal facility owned and operated by Defendant BFI–CSI and Defendant CECOS in Livingston Parish, Louisiana, EPA I.D. No. LAD000618298.

10. "LDEQ" means the Louisiana Department of Environmental Quality;

11. "LEQA" means the Louisiana Environmental Quality Act, L.R.S. 30:1051 *et seq.;*

12. "LHWR" means the Louisiana Hazardous Waste Regulations;

13. "Notify" and "submit" and other terms signifying an obligation to transmit or communicate documents and information mean to deliver in person, deposit in the United States mail or dispatch by express courier not later than the day that such transmission or communication is required by this Consent Decree. Should such day be a weekend day or a federally or state recognized holiday, the delivery, deposit, or dispatch shall be due on the next business day.

14. "Parties" means the United States, the State of Louisiana, and the Defendants;

15. "Plaintiff" means the United States of America, on behalf of the EPA;

16. "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.,* as amended, including particularly the Hazardous and Solid Waste Amendments of 1984 (HSWA), Pub.L. 98–616, 98 Stat. 3221 (1984).

17. "Site" means the commercial hazardous waste disposal facility owned and operated by Defendant BFI–CSI and Defendant CECOS in Livingston Parish, Louisiana, EPA I.D. No. LAD000618298. "Off Site" means lands other than the "site."

## II.

### JURISDICTION

The parties agree and will not contest that this Court has jurisdiction over the subject matter and over the parties pursuant to Section 3008 of RCRA, 42 U.S.C. § 6928, Section 7002 of RCRA, 42 U.S.C. § 6972, and also pursuant to 28 U.S.C. §§ 1331, 1345, and 1355. The Complaints filed herein state claims for which, if the allegations were proved, relief could be granted.

## III.

### PARTIES BOUND AND NOTICE OF TRANSFER

The provisions of this Consent Decree shall apply to and be binding upon the parties to this action, and their current and future officers, directors, agents, servants, employees, successors, assigns, and all persons, firms, entities and corporations in active concert and participating with them in performing any obligation under this Consent Decree. The undersigned representative of each party to this Consent Decree certifies that he or she is fully authorized by the party whom he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of that party, and to legally bind the party on whose behalf he or she executes this Consent Decree.

No change in ownership, corporate, or partnership status relating to the Livingston facility will in any way alter the status of the Defendants, or in any way alter the responsibilities of the Defendants under this Consent Decree. In the event of any conveyance of title, easement, or other interest in the Livingston facility, all of the Defendants' obligations under this Consent Decree shall continue to be met by the Defendants.

Defendants shall notify EPA and LDEQ in the manner specified in LHWR § 23.2(d) [40 C.F.R. § 270.72(d)], prior to the conveyance of title, easement, or other interest, including a leasehold interest, in Defendants' commercial hazardous waste disposal facility located in Livingston, Louisiana.

Defendants shall also provide a copy of this Consent Decree to the grantee 90 days prior to any such conveyance.

During the pendency of this Consent Decree any deed, title, or other instrument of conveyance shall contain a notice that the Livingston facility is the subject of this Consent Decree setting forth the style of the case, case number, and the Court having jurisdiction.

The Defendants shall notify each contractor retained to perform work contemplated herein of the requirements of this Consent Decree so that they are made aware of the work schedules set forth herein. Defendants shall further require each contractor to notify in writing each subcontractor of the requirements of this Consent Decree which are applicable to the work to be performed by such subcontractor.

## IV.

### PUBLIC INTEREST

The parties agree and the Court finds that settlement of these matters without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving these matters.

## V.

### COMPLIANCE RESPONSIBILITY

Defendants shall comply with all applicable provisions of RCRA regulations, the federally authorized Louisiana Hazardous Waste Management Program as set forth in the LEQA and the LHWR, the provisions of the LEQA, as well as the regulations promulgated pursuant to the LEQA and LHWR, notwithstanding their compliance with this Consent Decree.

## VI.

### COMPLIANCE SCHEDULE

The Defendants shall fully comply with the Schedule of Compliance as set forth in Attachment A, which is incorporated by reference into this Consent Decree.

## VII.

### ENVIRONMENTAL AUDIT

The Defendants shall initiate an Environmental Audit as set forth in Attachment B, which is incorporated by reference into this Consent Decree.

## VIII.

### SITE ACCESS

Until the termination of this Consent Decree, EPA and its employees and authorized agents, and LDEQ and its employees and authorized agents shall have the authority at reasonable times to enter the Livingston facility, and to have access to all necessary areas, for the purpose of monitoring or investigating compliance with the terms of this Consent Decree. Reasonable times shall include all times when the facility is operating and all times when the Defendants or their agents are performing work activity required by this Consent Decree. The monitoring and investigating authorized by this Section shall consist of (1) interviewing and obtaining written or recorded statements from personnel involved in work activity required by this Consent Decree, whether such personnel are employed by Defendants or by their contractors or subcontractors; (2) inspecting, reviewing, and copying all documents recording or describing work activity required by this Consent Decree; (3) observing, photographing, or otherwise documenting the performance or completion of work activity required by this Consent Decree; and (4) and conducting such other monitoring and investigative activities as EPA and LDEQ deem necessary to monitor the Defendants' work activity required by this Consent Decree.

At the time of entering the facility EPA and LDEQ employees and representatives shall present valid credentials or other official authorization and shall notify facility personnel when they anticipate making photographic or sound recordings, and Defendants shall have the right to make copies of such recordings. Defendants shall have the right to accompany EPA and LDEQ representatives and employees

throughout their presence at the facility and to monitor and record the investigative activities conducted by EPA and LDEQ. If such a recording of EPA's and LDEQ's investigatory activities is made the Defendants shall, upon request, give a copy of the recording to EPA and/or LDEQ. EPA and LDEQ employees and representatives shall meet the applicable health and safety requirements of the facility so long as said requirements do not impair or impede the ability of EPA or LDEQ employees and representatives to timely and properly monitor and investigate the Defendants' performance of the work activities required by this Consent Decree. This provision in no way limits any right of entry available to EPA or LDEQ pursuant to applicable Federal or state laws, regulations, or permits.

To the extent that the activities required by this Consent Decree necessitate access to areas adjacent to the Livingston facility and to the extent that those areas are presently owned by persons other than those bound by this Consent Decree, the Defendants will use their best efforts to obtain any necessary site access agreement from the owners within 30 days of determining that such access is required. Such agreements shall also provide equal access to EPA, its employees and authorized agents, and to LDEQ, its employees and authorized agents. Any such access agreements shall be incorporated by reference into this Consent Decree. In the event that site access agreements are not obtained within thirty (30) days, the Defendants shall within five (5) days notify EPA and LDEQ regarding the absence of such an agreement(s) and the efforts used by the Defendants to obtain an access agreement.

## IX.

### PENALTY

A. The Defendants shall pay a civil penalty of one million, one hundred thousand dollars ($1,100,000) to the United States in settlement of all claims alleged by the United States in its Complaint. The payment shall be made by certified or cashier's check made payable to "Treasurer, United States of America." This check shall be tendered in full to the United States Attorney for the Middle District of Louisiana within twenty (20) days of the time that this Consent Decree is entered by the Court. This civil penalty is not deductible for federal tax purposes.

B. The Defendants shall pay a civil penalty of nine hundred thousand dollars ($900,000) to the State of Louisiana in settlement of all claims alleged by the State of Louisiana in its Complaint in Intervention. The payment shall be made by certified or cashier's check made payable to "Louisiana Department of Environmental Quality". The check shall be tendered in full to the Attorney General for the State of Louisiana within twenty (20) days of the time that this Consent Decree is entered by the Court. This civil penalty is not deductible for federal tax purposes.

C. Defendants shall pay the sum of five hundred thousand dollars to Louisiana State University Foundation (LSU) for the purposes of and under the terms and conditions described in Appendix [Attachment] C, attached hereto and incorporated herein. The sum shall be tendered by Defendants to LSU within twenty (20) days from the date that this Consent Decree is entered by the Court. A copy of the letter and the check tendering the payment shall be mailed to EPA and LDEQ. This payment shall not be deductible for federal tax purposes.

## X.

### STIPULATED PENALTIES

A. Subject to the Force Majeure and Dispute Resolution provisions of this Consent Decree, the Defendants shall pay the following stipulated penalties for each failure to comply with Sections III, VIII, and XXIV of this Consent Decree, and the implementation schedules and performance and submission dates set forth in Attachments A and B.

(1) For failure to submit monthly progress reports or other reports required by this Consent Decree in a timely fashion, Defendants shall pay stipulated penalties in

the following amounts for each day during which each violation continues:

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $ 750.00 |
| 15th through 44th day | $2,000.00 |
| 45th day and beyond | $4,000.00 |

(2) For failure to meet any other deadline established in Attachments A and B and violations of Sections III, VIII, and XXIV of this Consent Decree, the Defendants shall pay stipulated penalties in the following amounts for each day during which each violation continues:

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $2,000.00 |
| 15th through 44th day | $4,000.00 |
| 45th day and beyond | $8,000.00 |

B. Stipulated penalties under this paragraph shall be paid by two certified checks of equal amounts with one-half of the owed penalty payable to the "Treasurer of the United States" and the other one-half payable to the "Louisiana Department of Environmental Quality".

Addresses for payment:
United States Attorney
Middle District of Louisiana
445 Florida Avenue
Baton Rouge, Louisiana 70801
Attorney General–State of Louisiana
Louisiana Department of Justice
11th Floor
625 North 4th Street
Baton Rouge, Louisiana 70804

Defendants shall identify to EPA and LDEQ in writing as soon as reasonably practical, and not later than in the monthly progress reports, any failure to meet Consent Decree requirements for which stipulated penalties may be due.

Plaintiff and Intervening Plaintiff reserve the right to demand payment of stipulated penalties upon an independent determination that a violation of this Consent Decree has occurred. The Plaintiff and Intervening Plaintiff shall notify the Defendants in writing of violations of this Consent Decree, and the amount of the penalty due. All stipulated penalties shall be paid within ten (10) days of receipt of notification of noncompliance, unless the Defendants invoke the dispute resolution procedures of Section XI. During the pendency of any dispute resolution pursuant to Section XI of this Consent Decree, the Defendants' obligation to pay stipulated penalties shall be held in abeyance. If the Defendants are successful in any dispute resolution pursuant to Section XI of this Consent Decree, they shall have no liability to pay stipulated penalties or other sanctions with regard to the matter submitted for dispute resolution. If the Defendants are unsuccessful in any dispute resolution, payment shall be made within twenty (20) days of any ruling by the Court. The Court may adjust the stipulated penalties in the interest of justice.

The stipulated penalties set forth above shall be in addition to the rights reserved to the Plaintiff and Intervening Plaintiff in Section XVI of this Consent Decree.

All stipulated penalties begin to accrue on the day that complete performance is due or a violation occurs, and continue to accrue through the final day of the correction of the noncompliance. Nothing herein shall preclude the simultaneous accrual of separate stipulated penalties for separate violations of this Consent Decree.

No stipulated penalties paid for violation of this Consent Decree shall be tax deductible.

## XI.

### DISPUTE RESOLUTION

In the event that the parties cannot resolve any dispute arising under any provision of this Consent Decree, including Attachments A and B, then the interpretation advanced by the Plaintiff and Intervening Plaintiff shall be considered binding unless the Defendants invoke the dispute resolution provisions of this Section.

Any dispute that arises with respect to the meaning or application of this Consent Decree, including Attachments A and B, shall initially be subject to a period of

informal negotiations, which shall not extend beyond thirty (30) days unless the parties otherwise agree in writing.

In the event that the parties are unable to resolve the dispute through such informal negotiations, Defendants may elect to dispute Plaintiff's or Intervening Plaintiff's position or interpretation by filing with the Court a petition describing the nature of the dispute and proposing a resolution of the dispute. Any such petition shall be filed within ten (10) days from the date of the close of the informal negotiation period. The Plaintiff and/or Intervening Plaintiff shall have thirty (30) days to respond to the petition. The filing of a petition asking the Court to resolve a dispute shall not, in itself, postpone the deadlines for the Defendants to meet their obligations under this Consent Decree with respect to the disputed issue. The filing of a petition shall stay Defendants' obligation to pay stipulated penalties pending resolution of the dispute. If the Defendants do not file a petition with the Court within the appropriate period of time they will have waived their right to challenge Plaintiff's or Intervening Plaintiff's resolution of the matter. In the event that Defendants do not prevail in the dispute, and stipulated penalties are applicable, stipulated penalties shall be assessed and paid as provided in Section X.

In any such dispute, the Defendants shall bear the burden of proof. The position or interpretation advanced by EPA and LDEQ shall prevail unless the Defendants prove that such position or interpretation is:

1. in violation of constitutional or statutory provisions;

2. in excess of the statutory authority of EPA and LDEQ;

3. arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

4. manifestly erroneous in view of the reliable, probative and substantial evidence offered by the parties in the dispute resolution process.

In resolving disputes the Court shall give due weight and due deference to the position or interpretation advanced by EPA and LDEQ. The identification in this Consent Decree and in the Attachment A and B of certain instances where the dispute resolution is to be invoked is not intended to be exhaustive.

## XII.

### FORCE MAJEURE

The Defendants' noncompliance with one or more of the provisions of this Consent Decree shall be excused to the extent and for the duration that noncompliance or delay in compliance is caused by a "force majeure" event. For the purposes of this Consent Decree, a "force majeure" event is defined as an event the circumstances of which are beyond the Defendants' control and that could not have been prevented by due diligence, including, but not limited to, any delay caused solely by Plaintiff or Intervening Plaintiff. This force majeure provision shall not apply to any noncompliance due to increased costs or Defendants' financial inability to carry out the provisions of this Consent Decree, to normal precipitation events, or to the Defendants' failure to make timely and bona fide applications to obtain permits.

If the Defendants determine that they will be unable to comply with any of the provisions of this Consent Decree due to a "force majeure" event, they shall notify the Plaintiff and Intervening Plaintiff in writing within ten (10) days of their first knowledge of the delay stating the nature, cause and anticipated length of the delay and all steps which the Defendants have taken and will take, with a schedule for implementation, to avoid or minimize the delay. Failure to provide this written notice shall constitute a waiver of the Defendants' right to invoke the provisions of this Section as a basis for delay of performance under this Consent Decree. If the parties agree that the delay was attributable to a "force majeure" event, the time for performance of the provision shall be extended for a period of time equal to the delay caused by the event.

If the parties do not agree that the delay was caused by a "force majeure" event, or are unable to agree on the extent of delay,

this matter shall be resolved pursuant to Section XI of this Consent Decree. In submitting the matter to the Court in accordance with Section XI of this Consent Decree, the Defendants shall have the burden of proving that the delay was attributable to a "force majeure" event, that the Defendants have exercised due diligence in minimizing the delay, and that, as a result of the delay, a particular extension period for compliance is required.

## XIII.

### PUBLIC ACCESS TO DOCUMENTS

All data, factual information, and documents submitted by the Defendants to the Plaintiff and Intervening Plaintiff pursuant to this Consent Decree shall be subject to public inspection unless identified as confidential by the Defendants in conformance with 40 C.F.R. Part 2 or applicable laws or regulations for the State of Louisiana, or otherwise exempted by the terms of the Consent Decree. The data, factual information, and documents so identified as confidential shall be disclosed only in accordance with EPA regulations or applicable Louisiana laws or regulations. Environmental contamination data, hydrogeological or chemical data, data submitted in support of a remedial proposal, or any other scientific or engineering tests or data shall not be deemed confidential.

## XIV.

### RECORD RETENTION

Defendants agree that they shall preserve, during the pendency of this Consent Decree and for a minimum of five years after its termination, at least one legible copy of all records and documents, including computer tapes, in their possession which relate in any way to their performance of their obligations under this Consent Decree. Not less than sixty (60) days prior to destruction of any such documents, Defendants shall notify the Plaintiff and Intervening Plaintiff that destruction of documents is planned and make such records available to EPA and LDEQ for inspection, copying or retention. This notification will

identify the nature of the documents and their storage location or locations.

Defendants further agree that within thirty (30) days of retaining or employing any agent, consultant or contractor for the purpose of carrying out the terms of this Consent Decree, Defendants will enter into an agreement, with any such agents, consultants or contractors whereby its agents, consultants and/or contractors will be required to provide a copy to the Defendants of all documents produced pursuant to this Consent Decree.

## XV.

### ADMISSIBILITY OF DATA

No party shall object to the admissibility in any subsequent proceeding of analytical data that it or anyone acting on its behalf gathers and generates on the grounds of hearsay or its failure to maintain chain of custody.

## XVI.

### RESERVATION OF RIGHTS

Except as provided in Section XVII (Covenant Not To Sue), the Plaintiff and Intervening Plaintiff hereby reserve all statutory and regulatory powers, authorities, rights, remedies, both legal and equitable, civil, criminal, or administrative which may pertain to Defendants' failure to comply with any of the requirements of this Consent Decree, including, without limitation, the assessment of penalties under Section 3008 of RCRA, 42 U.S.C. § 6928, against the Defendants, their officers and directors. The United States and the State of Louisiana specifically reserve their right, without limitation, to expend money under CERCLA at the facility or any off-site location(s) and to seek cost recovery for the expenditure of such money from the Defendants. The defendants reserve all rights to oppose such expenditures as allowed under the applicable statutes.

The State of Louisiana reserves the right to expend money under the LEQA at the facility or any off-site location(s) and to seek recovery as provided in the LEQA.

The rights reserved to Plaintiff and Intervening Plaintiff include the right to dis-

approve of work performed by the Defendants pursuant to this Consent Decree. This Consent Decree shall not be construed as a waiver or limitation of any rights, remedies, powers and/or authorities which the United States, EPA, the State of Louisiana, or LDEQ has under RCRA, CERCLA, LEQA, or any other statutory, regulatory or common law enforcement authority.

The entry of this Consent Decree and Defendants' consent to comply herewith, shall not limit or otherwise preclude the United States, EPA, the State of Louisiana, and LDEQ from taking additional enforcement action pursuant to any Federal or state laws, regulations or permitting conditions, including but not limited to an enforcement action pursuant to Section 3008(h) of RCRA, 42 U.S.C. § 6928(h), except that they agree not to impose or seek to impose additional penalties for the claims alleged in the Complaints in this action. This Consent Decree shall not be construed to affect or limit in any way the obligation of the Defendants to comply with all Federal, state and local laws and regulations governing the activities required by this Consent Decree.

This Consent Decree shall not be construed as a ruling or determination of any issue related to any Federal, State, or local permit, if required in order to implement this Consent Decree or required in order to continue or alter operations of the facility (including but not limited to construction, operation or closure permits required under RCRA) and the Defendants shall remain subject to all such permitting requirements. The Defendants shall be responsible for obtaining any Federal, state, or local permit(s) for any activity at the facility including those necessary for the performance of the work required by this Consent Decree and for the operation or closure of the facility.

Nothing in this Consent Decree is intended to release or waive any claim, cause of action, demand or defense in law or equity that any party to this Consent Decree may have against any person(s) or entity not a party to this Consent Decree, except as stated in Section XVII of this Consent Decree.

## XVII.

### COVENANT NOT TO SUE

Upon the payment by the Defendants of the civil penalty as provided in Section IX of this Consent Decree, the United States and the State of Louisiana covenant not to take civil judicial or administrative action against the Defendants, their officers, agents, or employees seeking civil penalties pursuant to 42 U.S.C. § 6928(a), 42 U.S.C. § 6928(g), 33 U.S.C. § 1311, 42 U.S.C. § 7413, or any analogous law of the State of Louisiana, for any violation alleged in the Complaints filed in this action.

## XVIII.

### COSTS

Each party shall bear its own costs and attorneys' fees in the action resolved by this Consent Decree.

## XIX.

### MODIFICATION

Except as provided for herein, there shall be no modifications or amendments of this Consent Decree without written approval of all parties to this Consent Decree or further order of this Court. Any modifications or amendments shall be in writing and shall have as the effective date the date specified therein, and shall be incorporated into the Consent Decree.

Any reports, plans, specifications, schedules, and attachments required by this Consent Decree are, upon written approval by EPA and/or LDEQ, incorporated into this Consent Decree.

## XX.

### CONFIDENTIAL BUSINESS INFORMATION CLAIMS AND FOIA APPEALS

Upon entry of this Consent Decree, the Defendants: (1) agree to review all claims that information previously submitted to EPA with regard to the NEIC investigation of the Livingston facility is confidential business information (CBI) pursuant to 40 C.F.R. Part 2 and provide to EPA within ninety (90) days after entry of this Consent

Decree, a list of documents on which such claims are preserved; and (2) shall withdraw all Freedom of Information Act (FOIA) appeals currently pending before EPA regarding the Livingston facility. Failure to provide such a list to EPA within ninety (90) days after entry of this Consent Decree shall constitute a waiver of all CBI claims.

## XXI.

### EFFECT OF SETTLEMENT

This Consent Decree represents a complete settlement of the claims for civil penalties and injunctive relief alleged in the Plaintiff's and Intervening Plaintiff's Complaints.

Without any admission of liability, Defendants hereby agree to waive all defenses which have been raised or could have been raised to the claims set out in the Plaintiff and Intervening Plaintiff's Complaints. This waiver is intended to benefit the Plaintiff and Intervening Plaintiff only, to the exclusion of all other persons and entities, and is made solely for the purposes of resolving the issues in this civil action.

## XXII.

### RETENTION OF JURISDICTION

This Court shall retain jurisdiction of this Consent Decree for purposes of ensuring compliance with its terms and conditions.

All parties retain the right to seek to enforce the terms of this Consent Decree and take any action authorized by Federal or State law not inconsistent with the terms of this Consent Decree to achieve or maintain compliance with the terms and conditions of this Consent Decree or otherwise.

## XXIII.

### INDEMNIFICATION

Defendants agree to indemnify and save and hold harmless the United States Government, its agencies, departments, agents, and employees, and the State of Louisiana, its agencies, departments, agents and employees, from any and all claims or causes of action arising from or on account of the acts or omissions of Defendants or their agents, independent contractors, receivers, trustees, and assigns in carrying out activities required by this Consent Decree.

## XXIV.

### SAMPLING

The Defendants shall submit to EPA and LDEQ the results of all sampling and tests or other data generated by their employees and/or consultants with respect to the implementation of this Consent Decree. Defendants shall submit these results in progress reports as required by Attachments A. Upon request, Plaintiff and Intervening Plaintiff shall provide Defendants with the results of all sampling or tests or other data generated by their employees and consultants with respect to implementation of this Consent Decree.

Not less than thirty (30) days prior to any sample analysis performed pursuant to this Consent Decree the Defendants will identify to EPA and LDEQ all laboratories to be used for sample analysis. EPA and LDEQ reserve the right to conduct a performance and QA/QC audit of the above specified laboratories before or during sample analysis. If the audit reveals deficiencies in laboratory performance or QA/QC, resampling and analysis may be required and if necessary a new laboratory may be required to perform the analysis.

At the request of EPA or LDEQ, the Defendants shall provide EPA and LDEQ with split or duplicate samples collected by the Defendants pursuant to this Consent Decree. The Defendants shall submit a schedule, at least quarterly, notifying EPA and LDEQ in advance of anticipated sample collection activity. The Defendants shall notify EPA and LDEQ of all changes in the schedule seven (7) days prior to a rescheduled sampling event, unless otherwise agreed to by the parties.

## XXV.

### PRECLUSION OF CLAIMS AGAINST THE HAZARDOUS SUBSTANCE RESPONSE TRUST FUND

The Defendants agree not to make any claims pursuant to Sections 111 and 112 of

CERCLA, or any other provision of law directly or indirectly against the Hazardous Substance Superfund established by CERCLA for costs incurred in complying with the terms of this Consent Decree. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a CERCLA claim within the meaning of 40 C.F.R. § 300.25(d).

## XXVI.

### EFFECTIVE AND TERMINATION DATES

This Consent Decree shall be effective upon the date of its entry by the Court.

When Defendants determine that they have complied with all requirements of this Consent Decree, including its attachments, they shall certify such compliance in writing to the Court, Plaintiff, and Intervening Plaintiff. Plaintiff and Intervening Plaintiff shall have 120 days following such certification to file with the Court and serve on Defendants written notice of any opposition to the compliance certificate. Such opposition shall state specifically what requirements of the Consent Decree have not been fulfilled. If no opposition to the certification is filed within the time allowed, Defendants may petition the Court with notice to Plaintiff and Intervening Plaintiff for termination of this Consent Decree, and the Court may so order after conducting such inquiry as it deems appropriate. If either Plaintiff or Intervening Plaintiff files written notice of opposition to Defendants' certification of compliance, Defendants may invoke the procedure for resolution of disputes set forth in Section XI of this Consent Decree. If, as a result of the dispute resolution procedure or otherwise, Defendants undertake additional work to meet the requirements of this Consent Decree, they shall upon completion of such work certify compliance with this Consent Decree in the manner described above.

The parties may move jointly to terminate this Consent Decree based on their representation that all its requirements have been satisfied, and the Court may order such termination after conducting such inquiry as it deems appropriate.

## XXVII.

### NOTICES

Whenever under the terms of this Consent Decree notice is required to be given, a report or other document is required to be forwarded by one party to another, or where service of any papers or process is necessitated by the dispute resolution provisions of Section XI, it shall be directed to the following individuals at the addresses specified below, unless any such person or any such person's successor gives notice in writing to the other parties of another person designated to send or receive such documents or of another address, or unless it is otherwise specifically provided in this Consent Decree. Any correspondence directed to the U.S. Department of Justice shall include a reference to U.S. DOJ Case No. 90–7–1–404.

As to the United States:

Roger J. Marzulla
Assistant Attorney General
Land & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Regional Counsel
U.S. Environmental Protection
Agency—Region VI
1445 Ross Avenue
Dallas, Texas 75202–2733

As to the State of Louisiana:

Warren E. Byrd, II
Assistant Attorney General
Louisiana Department of Justice
625 North 4th Street
Baton Rouge, LA 70804

Timothy W. Hardy
Assistant Secretary
Office of Solid and Hazardous Waste
Louisiana Dept. of Environmental Quality
625 North 4th Street
Baton Rouge, LA. 70804

George H. Cramer, II
Administrator
Ground Water Protection Division
Louisiana Department of Environmental
 Quality
625 North 4th Street
Baton Rouge, LA 70804

As to the Defendants

CECOS International, Inc.
P.O. Box 3151
Houston, Texas 77253
Attention: President

CECOS International, Inc.
27004 S. Frost Road
Livingston, LA 70754
Attention: District Manager

Browning–Ferris Services, Inc.
P.O. Box 3151
Houston, Texas 77253
Attention: Divisional Vice President,
Environmental Controls

Jones, Walker, Waechter, Poitevent Carrere & Denegre
Place St. Charles
201 St. Charles Ave.
New Orleans, LA. 70170–5100
Attention: Robert M. Contois, Jr.
Samuel O. Buckley, III

Any reports or data required to be submitted under this Consent Decree shall also be submitted to:

(4 copies)

William H. Taylor, Jr.
U.S. Environmental Protection Agency—
Region VI
Hazardous Waste Enforcement Section
Hazardous Waste Compliance Branch
1445 Ross Avenue
Dallas, Texas 75202–2733

(1 copy)

Barrett Benson
National Enforcement Investigations Center
U.S. Environmental Protection Agency
Building 53, Box 25227
Denver Federal Center
Denver, Colorado 80225

The parties designate the following individuals to receive any immediate notice and to communicate informally about problems incurred or anticipated in meeting the requirements of this Consent Decree and its attachments:

As to the United States

David Maiefski
U.S. Environmental Protection Agency
1445 Ross Ave.
Dallas, Texas 75202–2733
(214) 655–6775

As to the State of Louisiana

George H. Cramer, II
Administrator
Ground Water Protection Division
Louisiana Department of Environmental
Quality
625 North 4th Street
Baton Rouge, LA 70804
(504) 342–8950

As to the Defendants

Richard E. Oakley
Divisional Vice President
Environmental Remediation
Browning Ferris Services, Inc.
P.O. Box 3151
Houston, Texas 77253
(713) 870–7195

Such informal communication is intended to facilitate meeting the objectives of this Consent Decree and shall not relieve the parties of the notice and reporting requirements set forth elsewhere in this Consent Decree and its attachments.

We, the undersigned request this Court to enter the foregoing Consent Decree in accordance with 28 C.F.R. § 50.7.

For Plaintiff—United States of America

(s) Roger J. Marzulla

Roger J. Marzulla
Assistant Attorney General
Land and Natural Resources Division
United States Department of Justice
DATE: 8/10/88

(s) Craig E. Johnson

Craig E. Johnson
Trial Attorney
Environmental Enforcement Section
Land and Natural Resources Division
United States Department of Justice
10th & Pennsylvania Avenue, N.W.
Washington, D.C. 20530
DATE: 8/10/88

(s) [Illegible]

for Jonathan Z. Cannon

Deputy Assistant Administrator for Enforcement and Compliance Monitoring

U.S. Environmental Protection Agency

Washington, D.C. 20460

DATE: 8/3/88

United States Attorney

Middle District of Louisiana

By: (s) James Stanley Lemelle

James Stanley Lemelle

Acting United States Attorney

DATE: 8/12/88

OF COUNSEL:

Evan L. Pearson

Assistant Regional Counsel

U.S. Environmental Protection Agency

Region VI

1445 Ross Avenue

Dallas, Texas 75202-2733

Charles De Saillan

Office of Enforcement and Compliance Monitoring

U.S. Environmental Protection Agency

Washington, D.C. 20460

For Intervening Plaintiff—State of Louisiana

(s) William Guste

William Guste

Attorney General

State of Louisiana

DATE: 7-29-88

By: (s) Warren E. Byrd, II

Warren E. Byrd, II

Assistant Attorney General

Environmental Enforcement Section

Land and Natural Resources Division

Louisiana Department of Justice

DATE: 29 July 1988

(s) Paul H. Templett, PhD.

Paul H. Templett, Phd.

Secretary

Louisiana Department of Environmental Quality

DATE: 7/29/88

For Defendants—Browning–Ferris Industries, Chemical Services, Inc. and CECOS International, Inc.

(s) Robert M. Contois, Jr.

Robert M. Contois, Jr.

Jones, Walker, Waechter, Poitevent Carrere & Denegre

Place St. Charles

201 St. Charles Ave.

New Orleans, LA. 70170–5100

DATE: July 28, 1988

Consent Decree entered in accordance with the foregoing this 18 day of Oct., 1988.

(s) Frank J. Polozola

United States District Judge

ATTEST:

BY: ———————————

Deputy Clerk

(SEAL)

## ATTACHMENT A

## COMPLIANCE SCHEDULE

I. AIR

Within thirty (30) days after entry of this Consent Decree, Defendants shall submit to LDEQ the full report with certification on the completed performance and start-up testing of each of the scrubbers and their air contaminant emissions stacks for the new solidification building together with measurements of actual emission rates as required by Louisiana Air Emission Permit No. 1806 for each air emission source in the facility.

II. SURFACE WATER

A. Defendants shall comply with the Louisiana Water Discharge Permit No. WP0258 issued December 15, 1982, and modified on November 15, 1984, and the NPDES Permit No. LA0059153 (Permits). Defendants shall undertake the following measures in order to prevent further violations of the Permits:

1. Upon entry of this Consent Decree or earlier, either (a) cease discharges of underdrain waters to the waters of the United States and the State of Louisi-

ana, or (b) submit applications for modification of the Permits according to the appropriate regulations within 60 days of entry of this Consent Decree and immediately begin to monitor and report all discharges of underdrain waters according to the requirements and effluent limitations of the Permits for Outfall 101 on a frequency of once per week for the first month. If no effluent limitation is violated during the first month the Defendants shall monitor, monthly thereafter, and comply with said monitoring requirements and effluent limitations until such time as modified permits may be issued. If any effluent limitation is violated in the first month after the commencement of monitoring, the Defendants shall cease all discharges of underdrain waters and collect all such water for appropriate handling, treatment, and disposal as a hazardous waste.

2. Within thirty (30) days after entry of this Consent Decree, provide documentation that the person or persons assigned to the operation of the sewage treatment system at the facility is/are fully trained and certified by the State of Louisiana in the proper operation and maintenance of these systems.

3. Employ an independent contractor approved by LDEQ to evaluate the effectiveness of the current sewage treatment plant to comply with the requirements of the Permits. The list of contractors to perform this part shall be submitted to the LDEQ within fifteen (15) days after entry of this Consent Decree. Such evaluation shall include proposals for modifications to improve the design and operation of the treatment system and a detailed operation and maintenance manual. The results of the evaluation and a schedule for all modifications shall be submitted to LDEQ within forty-five (45) days after approval of the contractor(s) by LDEQ. After approval the modifications shall be implemented according to the approved schedule.

4. Employ an independent contractor approved by LDEQ to evaluate various treatment methods for reduction of Total Suspended Solids (TSS) in collected surface waters. The list of contractors to perform this part shall be submitted to LDEQ within fifteen (15) days after entry of this Consent Decree. The results of the evaluation and a schedule for all modifications shall be submitted to LDEQ within ninety (90) days after approval of the contractor(s) by the LDEQ. After approval, the modifications shall be implemented according to the approved schedule.

B. Upon entry of this Consent Decree, the Defendants shall monitor discharges from Outfall 001 at a measurement frequency of once per discharge event or weekly when discharge event exceeds seven (7) days for all priority pollutants listed in Part III, Table 1 of the Permits. These compounds are hereby designated as indicator compounds. Nothing herein shall be construed to prevent CECOS from petitioning LDEQ for a designation of different indicator compounds.

C. Within sixty (60) days after entry of this Consent Decree, Defendants shall complete cleanup of the shallow lagoon which is currently part of the effluent drain of the sewage treatment plant. The lagoon area shall be included in the evaluation required in paragraph II.A.3 of this compliance schedule. Within sixty (60) days of approval of the report required in II.A.3., complete all work necessary to prevent adverse effects on human health or the environment from this unit. If filling of the lagoon is the selected option, it shall be done in such a manner so as to eliminate the ponding of liquids at this location.

D. Upon entry of this Consent Decree, Defendants shall analyze and report on a continuing basis all of the water discharge samples for the concentration of individual metals in each water sample as required by the Permits.

E. Within thirty (30) days after entry of this Consent Decree, Defendants shall submit the results from the initial biomonitoring tests as required by the Permits.

F.  Within sixty (60) days after entry of this Consent Decree, Defendants shall submit to the Water Pollution Control Division of LDEQ, a full, written report which must include a detailed description of the circumstances of the violations cited in the Intervening Plaintiff's Complaint, corrective or remedial actions taken to mitigate any damages resulting from the violations, and the actions taken to achieve compliance with the regulations and the Permits.

### III.  GROUND WATER

Within sixty (60) days after entry of this Consent Decree, Defendants shall submit to the Secretary of LDEQ for approval to be implemented immediately on approval or approval as modified, a revised ground water monitoring program plan including the sampling and analytical techniques as follows:

1.  Install one additional cluster of monitoring wells within the facility boundaries in the north/northeast portion of the facility, upgradient of all past, future and current waste disposal units. The number and location of the wells must be sufficient to characterize the spacial variability of background water in zones IIIB, IVB, and V (shallow and deep zones).  Data from these wells shall be compared with the data from the two existing upgradient wells to fully characterize the background water quality at the facility.  The water quality in zones IIIB, IVB, and V in the wells downgradient of individual units shall be compared to the recharacterized background water quality in zones IIIB, IVB, and V.  All new wells shall be installed pursuant to EPA guidance as to construction techniques and materials;

2.  Install additional clusters of monitoring wells, downgradient of units 5, 5S, 10A, 10B, 11, 12 and 12L.  The monitoring wells shall be installed immediately adjacent to the units and shall be screened so as to monitor the individual, potential pathways of contaminant migrations (zones IIIB, IVB, and V). Additional clusters of monitoring wells shall be added downgradient, immediately adjacent to each new unit operated onsite.  All new wells shall be installed pursuant to EPA guidance as to construction techniques and materials for groundwater monitoring wells. Defendants may submit for LDEQ approval the type of material to be used in the construction of each well.

All such shallow monitoring wells shall be installed inside the individual unit slurry wall, where technically feasible. Deeper monitoring walls, i.e., wells in zones IVB and V, shall be installed outside the individual unit slurry wall, within thirty (30) feet of the unit where technically feasible.

3.  Submit documentation and certification of the construction of wells OW1, OW2, OW5B, OW6, OW13, D1, D2, D4, D7, and D8.  All monitoring wells in the OW, and D numbered Series that do not have "as-built" documentation and certification of the construction by a professional hydrogeologist or geotechnical engineer and/or are constructed or sealed improperly shall be replaced within sixty (60) days after being directed to do so by LDEQ/EPA pursuant to EPA guidance as to construction techniques and materials with ground water monitoring wells.

Submit documentation and certification that the abandoned OW Series wells were sealed in a manner so as to prevent the migration of contaminants between zones.  Submit a schedule and procedure to be used for the abandonment of OW5AN, OW11A, OW12A and OW12B.

4.  Use a sampling technique and protocol which produces a representative sample of ground water for volatile organics constituents and minimizes the escape of these constituents from the sample.  Revise, document and implement analytical procedures and techniques to be used to measure TOX, TOC, semivolatile organics, endrin, lead, cadmium, chromium and mercury in groundwater so as to achieve required detection levels.

A schedule for the completion of the work outlined in III above, shall be provided to the Secretary of LDEQ within sixty (60) days after entry of this Consent Decree.

## IV. HAZARDOUS WASTE

### A. UNCERTIFIED CLOSED LAND-FILL CELLS

Within ninety (90) days after entry of this Consent Decree, submit to the EPA and LDEQ for approval, a plan/report for the certification of the closure of landfill cells 8, 9, 10A, 10B, and 11. This plan/report shall consist of: (1) a brief chronology and history regarding the use and uncertified closure of the cells; (2) any communications (verbal, written, or otherwise) between the Defendants and EPA and LDEQ regarding the use, capping, or closure of the cells, (3) any and all factual, technical, or demonstrative evidence relating to the past or present condition of the cells and any appurtenances thereto which shall include evidence obtained through the use of field tests, borings, etc., regarding the permeability, composition and presence of at least two (2) feet of recompacted clay with a permeability coefficient of $1 \times 10^{-7}$ cm/sec or less plus at least six (6) inches of topsoil cover; (4) an analysis of the applicable statutory and regulatory standards of the certification of the closure of the cells; and (5) a scope of work to obtain certification of the closure of the cells and/or a timetable for the implementation and completion of remedial work necessary, if any, to meet the applicable closure standards as set forth in item 3 above.

The submitted plan/report, if approved by EPA and LDEQ, shall be implemented and completed within the time table in the approved plan. Defendants shall have the option of accepting the modifications by EPA and LDEQ and implementing and completing the modified plan/report or the Defendants may implement Section XI (Dispute Resolution) of this Consent Decree.

### B. FACILITY WASTE ANALYSIS PLAN

Within thirty (30) days after the entry of this Consent Decree, submit to EPA and LDEQ a copy of the single Waste Analysis Plan (WAP) in effect and in use at the facility. The Defendants shall also submit to EPA and LDEQ all subsequent modifications to said WAP within ten (10) days of the modification.

### C. FACILITY CONTINGENCY PLAN

Within thirty (30) days after the entry of this Consent Decree, Defendants shall submit to EPA and LDEQ a copy of the single Contingency Plan in effect and in use and the facility. The Defendants shall also submit to EPA and LDEQ all subsequent modifications to said Contingency Plan within ten (10) days of the modification.

### D. FACILITY RECORDATION PLAN

Within thirty (30) days after entry of a Consent Decree, the Defendants shall submit to EPA and LDEQ a description of the daily and monthly recording systems and methodologies currently used by the facility to locate individual waste deposits within each landfill cell. The description to be submitted to EPA and LDEQ shall include:

1. Copies of all forms and documents used for recording purposes.

2. A description of how each form is completed and by whom.

3. A description of where and when each form is completed and stored/filed.

4. A physical description of the markers used to record the horizontal location of wastes received.

5. A physical description of the riser pipes used to record the vertical location of wastes received.

6. A map and engineered drawing depicting the locations of benchmarks and current recording systems.

The horizontal grid system shall consist of markers located on a fifty (50) foot spacing along two adjacent sides of each

cell. The markers shall be established by survey in reference to permanent benchmarks on the site. The vertical grid system shall consist of at least two riser pipes with graduated markings every 2 feet located on opposite sides of each landfill. The uppermost graduated marking shall be surveyed in reference to a permanent benchmark on the site. Real time shall be used when recording the time a waste is deposited in a cell, and the recording shall be made at the cell at the time of the deposit. The recording system shall be integrated into the facility computerized waste tracking system.

### E. COMPUTERIZED TRACKING SYSTEM

Within thirty (30) days after entry of this Consent Decree, Defendants shall submit to EPA and LDEQ for approval, a plan for a computerized system for tracking of each waste load throughout the facility. The computerized system shall apply to both hazardous and non-hazardous wastes. The Defendants shall design a system that is capable, at a minimum, of recording preacceptance information and analyses performed at off-site labs (limited to results of fingerprint analysis and any land disposal restriction designation that may be applicable); the date of the preacceptance data; acceptance information and analyses of incoming wastes including fingerprint data; information which identifies wastes restricted from land disposal; all internal waste transfers (each waste transfer must be with a Shipping/Receiving/Transfer Ticket) from receipt at the facility to treatment, storage and final disposal, all internal waste transfers for wastes generated on-site such as contaminated rainwater, landfill leachate, truck washings, etc. (each waste transfer must be authorized by a Shipping/receiving/Transfer Ticket); the date and basin number of all wastes treated in the solidification building and the results of all test analyses on the solidified wastes; the contents date, weight or volume and location of wastes placed into and removed from storage; and the method

location and date of final disposal, treatment, or reclamation at the facility. Other than laboratory acceptance results which are recorded on a real time basis during the review of the shipment, all data shall be entered into the computer tracking system by the close of the next business day. Each waste shall be cross-referenced to the BFI waste code number, the hazardous waste manifest number or non-hazardous waste shipping bill of lading number for each shipment, and the Shipping/Receiving/Transfer Ticket numbers. In addition, records of all waste analyses and trial tests shall also be maintained in the system as well as references to all developed documentated data on the wastes.

The Defendants shall begin implementation of this plan or the plan as modified by EPA or LDEQ within thirty (30) days after approval by EPA and LDEQ, and fully implement this plan within two hundred seventy days (270) days after approval. The computerized system shall be applicable to all wastes received at the facility thirty (30) days after approval.

In addition to the computerized system, the facility's manual recordkeeping shall be maintained. After retention of papers records for a period of three (3) years, such records may be maintained on microfiche or equivalent.

### F. INSPECTIONS

Immediately upon entry of this Consent Decree, implement and document daily inspections for leaks from containers in/on vehicles that will not be unloaded within 24 hours of receipt. Any container found leaking shall be repacked immediately and/or treated.

### V. MONTHLY REPORTING

The Defendants shall provide written progress reports to EPA and LDEQ by the tenth day of every month during the implementation of this Compliance Schedule

which describes in detail the actions which have been taken during the previous month toward achieving compliance with this Consent Decree. The progress reports shall begin the first full month following entry by the Court of this Consent Decree. Said reports shall, at a minimum:

(1) describe the actions which have been taken toward achieving compliance with this Consent Decree;

(2) summarize the results of sampling and tests and other data received by the Defendants;

(3) discuss all tasks and actions completed during the past month, as well as such actions and tasks that are scheduled for the next month; and

(4) identify any Consent Decree requirements not completed as required and any problems or anticipated problems.

### ATTACHMENT B

### ENVIRONMENTAL AUDIT

### I. SCOPE OF WORK

In order to ensure full compliance with applicable environmental laws, regulations, and permits by the Defendants' Livingston facility in an efficient and coordinated manner, the Defendants shall undertake the following auditing tasks, under which:

(a) An independent auditor retained by and paid for by the Defendants and approved by EPA and LDEQ, shall, subject to EPA and LDEQ oversight, audit the Livingston facility and prepare a report on their assessment of the Defendants' compliance with RCRA, CWA, and CAA laws, regulations, and permits (and equivalent state laws, regulations, and permits);

(b) The independent auditor shall perform an analysis of the Defendants' environmental management systems, practices and policies, at the Livingston facility and in the Defendants' corporate offices having responsibility for supervision of environmental compliance activities at the Livingston facility.

The performance standard for each audit is to complete a detailed and professional investigation, as set forth in the Audit Work Plan (described below), of recordkeeping and operating practices and environmental management operations at Defendants' Livingston facility and corporate offices having responsibility for the supervision of environmental compliance activities at the Livingston facility.

### II. SELECTION OF AUDIT FIRM

Within forty-five (45) days after entry of this Consent Decree, the Defendants shall propose an Audit Firm to EPA and LDEQ for approval. The Audit Firm shall be an expert in environmental auditing, environmental management systems, and RCRA, CWA, and CAA compliance. The Audit Firm must be capable of exercising the same independent judgment that a Certified Public Accounting firm would be expected to exercise in auditing a publicly held corporation. In addition, the Defendants shall require the proposed Audit Firm to describe:

(a) any stock ownership in BFI–CSI, CECOS, any parent, subsidiary, or affiliated corporation;

(b) all contractual agreements the Audit Firm has or has had with the Defendants in regard to the development of recordkeeping or operational procedures, the designing of equipment or structures, or the construction of equipment or structures at any of the Defendants' facilities.

Such descriptions shall be included in the proposal submitted to EPA and LDEQ within forty-five (45) days after entry of this Consent Decree.

If EPA and LDEQ reject the proposed audit firm, then the Defendants shall propose an alternate audit firm for EPA and LDEQ approval.

### III. AUDIT WORK PLAN

Within forty-five (45) days after approval of the Audit Firm, the Defendants shall submit a proposed Audit Work Plan to EPA and LDEQ for approval. The proposed Audit Work Plan shall include audit-

ing protocols to be used by the Audit Firm, a schedule for conducting the facility audit and for the completion of all tasks set forth in the Scope of Work, and the names and resumes of those Audit Firm employees who will be primarily responsible for performance of the tasks set forth in the Scope of Work.

The portion of the Audit Work Plan dealing with the Facility Compliance Audit shall include, but not be limited to:

(1) waste pre-acceptance and acceptance records and procedures currently utilized by the facility to ensure compliance with the federal and state land disposal restrictions;

(2) waste pre-acceptance and acceptance records and procedures utilized by the facility to ensure compliance with federal and state restrictions regarding disposal of liquid wastes in landfills, including test procedures implemented by the facility to confirm the absence of free liquids;

(3) waste pre-acceptance and acceptance records and procedures to ensure ignitable and reactive wastes are treated, stored, or disposed of at the facility in accordance with the applicable regulations, including test procedures implemented by the facility to ensure that after treatment, the resulting waste, mixture or dissolution or material no longer meets the definition of ignitable or reactive waste; and

(4) waste stream and waste load pre-acceptance procedures in order to ensure that detailed chemical and physical analyses of all wastes proposed for acceptance at the facility are reviewed and approved by the facility technical manager prior to treatment, storage, or disposal.

The Audit Work Plan, or the Audit Work Plan as modified by EPA and LDEQ, shall be initiated within thirty (30) days of notification by EPA and LDEQ of their approval, in accordance with the schedule contained therein.

## IV. AUDIT PROCEDURES

The Audit Firm shall have access to and may review any records (except attorney-client communications) which bear on determining compliance by the facility with applicable regulatory requirements. However, the Audit Firm shall focus on determining compliance with the applicable regulations during the previous 12–month period. Records to be reviewed during the audit may include, but not be limited to:

(1) All records required by State, Federal or local laws to be maintained by the Defendants;

(2) Facility operating records, such as waste profile sheets containing waste pre-acceptance verification data, waste tracking data for intra-facility movement of received wastes or wastes generated on-site, waste storage data, waste treatment data, and data reflecting the disposition of received wastes, including landfill cell grid sheets;

(3) Applications, licenses, permits and approvals, unit operation plans, operation and maintenance plans, or other regulatory documents pertaining to on-site activities at the facility;

(4) Environmental monitoring plans, with specific attention to ground water monitoring;

(5) Waste treatability procedures, methods, and study results;

(6) Manifests for wastes entering or leaving the facility;

(7) Records of use, maintenance and decommissioning of vehicles used on-site for transportation of hazardous wastes;

(8) Vehicle washing records;

(9) Facility inspection records and maintenance records for equipment and structures, including the ground water monitoring wells;

(10) Employee training records;

(11) Contingency Plan and emergency procedures;

(12) Corporate and facility guidelines, policies and internal operating rules

pertaining to facility operations, inspections, personnel training, record-keeping practices, emergency response and communications, closure and post-closure activities (but not including internal corporate compliance audit materials); and

(13) Any effluent data, including effluent and intermediate discharges to surface water and discharge locations specified by federal or state permits; and

(14) All other records bearing on RCRA, CWA, and CAA compliance kept at the Livingston facility or Defendants' corporate headquarters.

The Audit Firm shall have access to all hazardous waste management units (HWMUs), equipment, and structures used at the facility to manage, treat, store, or dispose of wastes. The Audit Firm shall observe and evaluate actual operation and maintenance procedures for all HWMUs and other principal equipment and structures at the facility, including the observation and evaluation of sample collection at the ground water monitoring wells.

The Audit Firm shall provide a minimum of three blind standards (i.e., pre-analyzed samples containing known constituent concentrations) to each laboratory that routinely conducts preacceptance testing, surface water and ground water analysis for the Defendants, and also to the Livingston on-site laboratory. The results of the analyses of these samples will be used to evaluate the ability of each laboratory to quantify representative hazardous constituents in various media.

## V.  FACILITY AUDIT REPORT

The Facility Audit Report shall describe in detail: (1) the procedures followed during the audit, the facility itself, the regulatory history and current compliance status of the facility; (2) each potential violation detected during the audit; (3) any other information, which in the judgment of the Audit Firm, merits review by EPA or LDEQ. For each potential violation reported, the Facility Audit Report shall also indicate the relevant statutory or regulatory section; the particular area of the facility where the violation occurred (if appropriate); the dates during which the violation occurred or existed (if it can reasonably be determined); and any other relevant or appropriate information.

In addition, the Facility Audit Report shall include, as a minimum, a discussion of:

(1) All hazardous wastes whose recorded location differ from their observed physical location, or whose physical location cannot be corroborated by facility records.

(2) Whether the facility waste analysis plan (WAP) is adequate to sufficiently manage the hazardous waste generated, treated, stored, disposed of, or otherwise handled at the facility in accordance with the applicable federal or state laws and regulations, and whether the Defendants are in compliance with the procedures in the WAP for preacceptance and acceptance of hazardous wastes.

(3) Any observed deviations from Defendants' written operating procedures, including documentation on any untimely response to repair of deteriorating or malfunctioning waste containers, structures (including ground water monitoring wells) or equipment.

(4) Recommendations as to potential significant improvements and/or modifications that should be made to Defendants' operating procedures to achieve compliance with all applicable regulatory requirements.

(5) The results of the laboratory evaluations conducted pursuant to Section IV.

(6) Adequacy of the facility's waste tracking system, including the computerized waste tracking system, when implemented.

## VI.  COMPLIANCE REPORT AND PLAN

The Defendants shall implement as soon as practicable procedures to correct any

violation identified in the Facility Audit Report. No later than sixty (60) days after the Defendants receive the Facility Audit Report, the Defendants shall prepare a Compliance Report and Plan indicating how the facility has corrected or is correcting each deficiency. All compliance actions taken by the Defendants shall be undertaken in accordance with applicable Federal, State and local laws.

The Compliance Report and Plan shall describe in detail every compliance action taken in response to the Facility Audit Report. In the case of violations which are not corrected within sixty (60) days of receipt of the Facility Audit Report, the Compliance Report and Plan shall describe actions to be taken in response to any violations or findings in the Facility Audit Report. The Defendants shall certify that the information presented in the Compliance Report and Plan is accurate.

Failure to commence or complete any specific work activity in response to the Facility Audit Report shall not be construed as a failure to meet a deadline within the meaning of Section X(A)(2) of the Consent Decree.

## VII.   CORPORATE MANAGEMENT SYSTEMS REPORT

No later than ninety (90) days after the Facility Audit Report is submitted to the Defendants, the Audit Firm shall submit to the Defendants, a Corporate Management Systems Report which shall:

(1) Identify and describe the existing facility environmental operations and the corporate offices responsible for overall company-wide environmental compliance and management systems, policies, and prevailing practices as they affect all applicable statutory and regulatory compliance.

(2) Evaluate such operations and systems, practices and policies and identify and describe fully the perceived weaknesses in such operations and systems, practices and policies by comparing them, to the extent practicable to:

(a) their ability to promote compliance with all applicable statutory and regulatory requirements;

(b) the existing practices, programs and policies of other hazardous waste disposal corporations and other industrial corporations with similiar operations operating within the United States, based upon available literature, public information, and audit firm's non-confidential experience pertinent to regulatory compliance programs, practices and policies currently operative in the disposal industry in the United States;

(c) the history of operations in terms of the facility's compliance programs, compliance record and environmental management practices over the previous five years.

The auditor shall evaluate the foregoing information, using such factors as the auditor believes to be relevant and appropriate, which factors shall be stated in the report.

(3) Based on the evaluation required in paragraph 2 above, the auditor shall identify and describe fully with supporting rationales, the perceived areas, if any, where Defendants' environmental management systems, practices and policies may be improved as they affect the facility's compliance obligations, listing specific options for any improvements at the facility in the following areas:

(a) environmental compliance program management operation, staffing, education and experience requirements.

(b) lines of authority to Defendants' corporate offices responsible for overall company-wide environmental compliance and management systems, policies, and practices, and relationship to the operating facility manager.

(c) personnel training for individual employee compliance obligations.

(d) Operations and Maintenance (O & M) procedures for all Solid Waste Management Units' (SWMUs) waste leachate collection and sampling equipment.

(e) evaluation of operations and pollution control equipment in terms of adequacy of design and compatibility with wastes being passed through such equipment.

(f) quality and thoroughness of implementation of all waste and wastewater analysis plans for both incoming and outgoing waste streams directly discharged, emitted, released to the ambient environment, or conveyed offsite in bulk shipments.

(g) preparation of Quality Assurance and Quality Control programs for sampling and analysis and for environmental testing procedures, including corporate and facility laboratories and contract laboratories for the facility.

(h) preparation of records needed to provide the facility management with an adequate data base to accurately determine compliance with all applicable statutory and regulatory requirements, with particular attention to waste generation (including quantity and chemical composition), movements, treatment and ultimate disposition by location of waste source, handling points and final disposition.

(i) preparation of self-monitoring reports required to be filed with the EPA and LDEQ.

(j) preparation and review of Incident Reports evaluating causes of equipment malfunctions, improper waste handling, or breakdowns, with specific recommendations for corrective steps and preventive O & M, along with procedures for reporting these recommendations to corporate headquarters.

## VIII. CORPORATE MANAGEMENT REPORT AND PLAN

No later than ninety (90) days after it has received the Corporate Management Systems Report, Defendants shall prepare a Corporate Managment Systems Report and Plan describing in full what actions it has taken or will take to implement the recommendations of the Corporate Management Systems Report, or responding to the findings and recommendations and explaining why implementation of the recommendations is not necessary.

## IX. SUBMISSION OF AUDIT REPORTS

All Audit Reports required to be prepared under this Consent Decree shall not be submitted to EPA or LDEQ unless they are specifically requested in writing from the Defendants or Audit Firm by the Director, Hazardous Waste Management Division, EPA–Region VI, or the Secretary of LDEQ. If the reports are requested, the Defendants or Audit Firm shall provide the reports within ten (10) days of receipt of the request.

The Audit Firm shall notify EPA and LDEQ of the availability of the the Facility Audit Report and the Corporate Management Systems Report simultaneously upon submission of the respective reports to the Defendants. The Defendants shall also notify EPA and LDEQ upon completion of the Compliance Report and Plan and the Corporate Management Report and Plan.

## X. ADDITIONAL AUDIT REQUIREMENT

The Defendants, through the use of a different independent audit firm, shall conduct a second environmental audit of the Livingston facility according to the procedures set forth above. The second environmental audit shall begin one year after submission of the Corporate Management Report and Plan by the Defendants, commencing with Section II—Selection of Audit Firm.

## XI. USE OF AUDIT REPORTS BY EPA AND LDEQ

The United States and the State of Louisiana agree that the Facility Audit Report and the Compliance Report and Plan may not be used as direct evidence in a proceeding to assess a civil penalty under RCRA, CWA, or CAA if the violation is corrected within the time allowed below after delivery of the Facility Audit Report to the facility. The Facility Audit Report and the Compliance Report and Plan may be used as direct evidence in a proceeding to assess a civil penalty under RCRA, CWA, or CAA

if the violations remain uncorrected after the period specified below and may be used in any circumstances as direct evidence of the duration or degree of Defendants' knowledge of a RCRA, CWA, or CAA violation. Defendants do not waive any legal rights they may have to object to the admissibility of such evidence. Documents prepared by or for the Defendants pursuant to these audit provisions are not required by statute or regulation and shall remain confidential to the maximum extent permitted by law.

The restriction on use of the audit reports as direct evidence in proceedings to assess civil penalties under RCRA, CWA, or CAA shall not apply to any violations identified through reporting requirements imposed on the Defendants by statute or regulation.

With regard to any RCRA, CWA, or CAA violation (or violation under equivalent state statutes or regulations) which occurred during the time period beginning with commencement of the audit period and ending with the time allowed for corrective action identified below, and which is identified specifically or by specific type in the Facility Audit Report or the Compliance Report and Plan, but not those specific types of violations which arise from a knowing or willful disregard of applicable legal standards, EPA and LDEQ will not seek civil penalties for such violations:

(1) if corrected as soon as practicable, but not to exceed sixty (60) days after delivery of the Facility Audit Report; or

(2) for any violation which cannot be corrected within sixty (60) days, if the Defendants commence correction as soon as practicable, but not more than sixty (60) days after receipt of the Facility Audit Report and progress expeditiously to completion of the correction.

EPA and LDEQ may seek civil penalties under RCRA, CWA, and CAA for violations identified by EPA or LDEQ through inspections, information requests, or any other means independent of the audit. The burden of proof that the evidence of the violation was not independently obtained is on the Defendants. EPA and LDEQ may seek civil penalties for violations identified through self-reporting requirements, including but not limited to information obtained from Discharge Monitoring Reports (DMRs) and Non–Compliance Reports (NCRs) or any such reports filed pursuant to RCRA, CWA, or CAA requirements.

ATTACHMENT C

MEMORANDUM OF AGREEMENT

BETWEEN

LOUISIANA STATE UNIVERSITY FOUNDATION

AND THE

STATE OF LOUISIANA THROUGH THE

LOUISIANA DEPARTMENT OF JUSTICE

ON BEHALF OF THE

LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY

ESTABLISHING THE

ENDOWMENT FOR THE STUDY OF HAZARDOUS WASTE

This Memorandum of Agreement (Memorandum) entered into and effective this 29th day of July, 1988, by and between Louisiana State University Foundation (LSU) and the State of Louisiana through the Louisiana Department of Justice (LDOJ) on behalf of the Louisiana Department of Environmental Quality (LDEQ).

WITNESSETH:

WHEREAS, LSU has established an Institute for Environmental Studies within the Center for Energy Studies to develop innovative technologies to monitor, treat and reduce hazardous environmental contaminants, with a view towards alleviating state, national and international environmental contaminant problems; and

WHEREAS, the Louisiana State University Paul M. Hebert Law Center undertakes legal research activities in environmental law in order to develop a sound consistent legal regime for the treatment, storage and disposal of hazardous waste and the remediation of problems from past hazardous waste disposal activities, which legal regime implements policies of environmental protection, responds to technological and regulatory changes, and insures properly functioning legal and administrative structures in achieving environmental quality; and

WHEREAS, support for such research is in the best interests of LDOJ and LDEQ;

NOW, THEREFORE, LSU does hereby establish the Endowment for the Study of Hazardous Waste and LSU, LDOJ and LDEQ agree as follows:

## ARTICLE I—PAYMENT

1.0 LDEQ represented by the Louisiana Department of Justice and the United States Environmental Protection Agency represented by the United States Department of Justice have previously undertaken a joint environmental enforcement action against Browning–Ferris Industries Chemical Services, Inc. and CECOS International, Inc. (BFI–CSI/CECOS). Pursuant to Section IX of the Consent Decree, LDOJ and LDEQ have secured for LSU an irrevocable payment from BFI–CSI/CECOS to LSU of Five Hundred Thousand Dollars ($500,000.00), to establish the Endowment for the Study of Hazardous Waste, $400,000.00 of which shall be dedicated for research activities (as described below) of the Institute of Environmental Studies within the Center for Energy Studies and $100,000.00 of which shall be dedicated for research activities (as described below) of the Paul M. Hebert Law Center.

1.1 LSU hereby accepts such payment and the establishment of said endowment.

1.2 LSU hereby agrees that it will use $400,000.00 of the endowment solely for funding research by the Institute for Environmental Studies of the Center for Energy Studies into the effects of the land disposal and alternative methods of disposal of hazardous waste upon the environment and the public health, safety and welfare with consideration of past and present land disposal practices, the consideration of the future of land and other disposal practices as well as alternatives for reduction, elimination, treatment, storage and disposal of hazardous waste, groundwater considerations, and remediation alternatives. LSU further agrees to use the endowment only for such direct expenses incurred in conducting said research such as equipment, testing, supplies and the pro-rata allocation of graduate student stipends and/or faculty salaries.

1.3 LSU hereby agrees that it will use $100,000 of the endowment solely for funding legal research by the Law Center into the legal system regulating the generation, treatment, storage and disposal of hazardous waste, including administrative law and procedure for insuring compliance with statutory and regulatory requirements, substantive laws, rules and decisions regulating past and present hazardous waste generation, treatment, storage, disposal and remediation, and alternatives and improvements to the existing legal regime. LSU further agrees to use the endowment only for such direct expenses incurred in conducting said research such as equipment, library and similar research materials and supplies and the pro-rata allocation of law student stipends and/or faculty salaries.

1.4 In no event shall LDEQ or BFI–CSI/CECOS be obligated to make any additional payments.

1.5 This agreement will not prevent LSU from soliciting and acquiring other sponsors to supplement the support for the Endowment for the Study of Hazardous Waste received from LDEQ.

## ARTICLE II—REPORT

LSU will submit to LDEQ and the U.S. District Court, Middle District of Louisiana, and make available to the general public, all final research reports resulting from research supported by such endowment for a period of five years. LSU will provide

financial audits of the Endowment for the Study of Hazardous Waste to LDEQ and the U.S. District Court upon request.

## ARTICLE III—ACKNOWLEDGEMENTS

LSU will acknowledge the endowment created by the State of Louisiana through LDOJ and on behalf of LDEQ pursuant to this Memorandum of Agreement through public media announcements, written statements, and specifically in all publications partially or totally funded by the endowment inclusive, but not limited to dissertations, thesis and referred journal articles. LSU will inform LDEQ of all such acknowledgements for its review prior to public release.

IN WITNESS HEREOF, the parties have caused this Memorandum to be executed in duplicate originals by their duly authorized representatives as of the day and year first above writtten.

Louisiana State University Foundation:

(s)Charlie W. Roberts
Charlie W. Roberts
Secretary, LSU Foundation

7/29/88
Date

State of Louisiana through the Louisiana Department of Justice and on behalf of the Louisiana Department of Environmental Quality

(s)Warren E. Byrd, II
Warren E. Byrd, II
Assistant Attorney General

29 July 1988
Date