SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,

v.

ZALE CORPORATION, et al.,
Defendants-Appellees.

No. 78–3381.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 16, 1981.

William A. Dietch, Asst. Gen. Counsel, Jacob H. Stillman, Bruce Rinaldi, Ralph Ferrara, David Ferber, Rosalind Cohen, S.E.C., Washington, D. C., for plaintiff-appellant.

Joel Held, Robert Edwin Davis, Dallas, Tex., for Underwood.

Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

The Securities and Exchange Commission (SEC) brought suit against Zale Corporation and several of its officers to establish past violations and to enjoin future violations of the securities laws. The district court entered orders of permanent injunction by consent against all defendants except appellees Sol Shearn Rovinsky and Joseph D. Underwood. The court granted their motions for summary judgment, concluding as a matter of law that the SEC was not entitled to obtain a permanent injunction against them. We conclude that summary judgment was inappropriate in this instance and accordingly reverse the judgment below and remand for further proceedings.

In essence, the SEC's complaint alleges in relevant part that during a period spanning some six years, Mr. Rovinsky, aided principally by Mr. Underwood, repeatedly defrauded the government out of millions of dollars in tax revenues by illegally manipulating fund transfers among Zale subsidi-

aries.[1] The corollary of their alleged accounting sleight of hand was the misleading overstatement of earnings per share in Zale's financial statements. The SEC's position is that the egregious and recurrent character of these alleged violations of the antifraud provisions of the securities laws,[2] if proved, would alone warrant the award of injunctive relief against these defendants. Appellees contend that changed circumstances render it unreasonable to expect that violations, if they occurred in the past, will occur again.

## I.

■ Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), authorize the Commission to seek and direct the courts to enter permanent restraining orders upon a "proper showing" that the defendant "is engaged or is about to engage" in violations of the securities laws. Although the mere fact of a past violation does not ipso facto establish the SEC's right to injunctive relief, and thus is not alone tantamount to the "proper showing" of present or future violations, the Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a "reasonable likelihood" of future transgressions. See, e. g., SEC v. Murphy, 626 F.2d 633 (9th Cir.1980); SEC v. Bonastia, 614 F.2d 908 (3rd Cir.1980); SEC v. Caterinicchia, 613 F.2d 102 (5th Cir.1980); SEC v. Blatt, 583 F.2d 1325 (5th Cir.1973); SEC v. Koracorp Industries, 575 F.2d 692 (9th Cir.1978).

■ Relevant considerations in the "reasonable likelihood" analysis resolve into essentially three areas of inquiry: the nature of the past violation, the defendant's present attitude, and objective constraints on (or opportunities for) future violations of the securities laws. See, e. g., SEC v. Murphy, supra, at 655; SEC v. Bonastia, supra, at 912. As we stated in SEC v. Blatt, supra, at 1334 n.29:

> Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

Thus, it is not a single factor, but rather the sum of the circumstances surrounding the defendant and his past conduct that governs whether to grant or deny injunctive relief.

## II.

In granting defendants' motions for summary judgment in this instance, and thus in concluding that they succeeded in proving the absence of any genuine issue of fact material to judgment in their favor, the district court assumed for purposes of his ruling that past violations occurred.[3] However, since injunctions have repeatedly been

---

**1.** Those counts in the complaint pertaining to these defendants are set forth in the appendix to this opinion.

**2.** In particular, section 10(b) of the Securities and Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Although the Supreme Court has held that the SEC is required to establish scienter as an element of a civil enforcement action to enjoin violations of section 10(b) and Rule 10b-5, Aaron v. SEC, 446 U.S. 680 (1980), we reject appellee Underwood's contention that the SEC is therefore required to use the word "scienter" in its complaint in order to state a cause of action. The SEC's allegations here that both defendants employed a "device, scheme and artifice to defraud" and that Mr.

Rovinsky, "aided and abetted" by Mr. Underwood, "devised a scheme for manipulating financial records for the purpose of evading federal income taxes" are sufficient to suggest a theory of liability resting upon intentional misconduct. See Weissbuch v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 558 F.2d 831, 833 (7th Cir.1977).

**3.** At the hearing on the motions for summary judgment, the district judge stated:

> I will assume for the sake of argument on the law that these are the facts that exist [that past violations occurred]. I am not going to find that, I am just assuming that in order to determine a question of law.

Record on Appeal, Vol. II, p. 34.

granted in cases presenting less significant prior violations than those assumed to have occurred in this instance, *see, e. g., SEC v. Blatt, supra,* we fail to understand how the court's assumption led to its conclusion. Since hypothesizing the existence of repeated willful violations of a consequential nature patently cannot help to establish the defendants' right to prevail here as a matter of law, the court must have relied on factors wholly independent of the character of the past conduct to reach its result.

■ With respect to Mr. Rovinsky, the only fact appearing in the record that could have influenced the court's decision, and the only one raised by Mr. Rovinsky in his motion for summary judgment, is the fact that he is no longer employed by Zale Corporation. But as the Third Circuit stated recently in *SEC v. Bonastia, supra,* at 913:

> Changed circumstances of the violator are relevant in determining whether an injunction shall issue, but a change in occupation, without more, will not provide a complete defense to an injunction suit .... The district court inexplicably ignored the recurrent nature of [the defendant's] violations and gave no weight to the inferences naturally drawn therefrom.

We agree that a change in occupation, without a detailed showing of how that change necessarily renders it unreasonable to expect future violations, is legally insufficient to defeat injunctive relief and thus, a fortiori, is insufficient to establish the moving party's right to summary judgment. *See SEC v. Koracorp Industries, supra.*

■ Although it is more difficult to discern the exact basis for the court's judgment in favor of Mr. Underwood, the only relevant factor raised in his motion for summary judgment of any persuasiveness is that the conditions imposed on Zale Corporation pursuant to the consent judgment would greatly impede future violations.[4] We cannot agree, however, that this hindering circumstance is sufficient to affirm summary judgment in this instance. If Mr. Underwood, as the court apparently assumed, used his expertise as a certified public accountant to repeatedly and knowingly aid his superiors in defrauding the public, then the fact that ancillary SEC action will force him to act more circumspectly in the future is simply not enough to countervail the strong inference of future wrongdoing arising from his actions in the past. This is particularly true when, as here, the defendant admits to no wrongdoing, but rather continues to profess that he was merely the unwitting participant in someone else's scheme. *See, e. g., SEC v. Murphy, supra.*

Thus, concluding that the defendants were not entitled to judgment as a matter of law given the court's assumption that both engaged in serious, recurrent wrongdoing and that triable issues of fact remain, we REVERSE the entry of summary judgment in their favor and REMAND the causes for further proceedings consistent with this opinion.[5]

4. Zale Corporation consented to, inter alia, electing three independent members to its Board of Directors, reconstituting the Audit Committee so as to give the independent directors a majority, and adopting a "Code of Ethical Standards and Business Practices." *See* Record on Appeal, Vol. I, pp. 32–39.

5. Several miscellaneous points require brief mention. First, it is clear that the court erred during the hearing on the cross motions for summary judgment in characterizing the statutory injunction at issue as "extraordinary relief." *See, e. g., SEC v. Caterinicchia, supra,* at 105. Second, we find no merit to appellee Underwood's argument that the SEC's failure to answer requests for certain admissions (concerning the lack of evidence—beyond that attendant to the past violations—that Mr. Under-

wood was engaged or about to engage in violations of the securities laws) establishes his right to summary judgment. These admissions leave unaffected the question presented in this case: were the past violations of sufficient gravity to warrant a controlling inference of future misconduct? Third, since Mr. Rovinsky, unlike Mr. Underwood, apparently does not dispute his participation in the scheme detailed in the SEC's complaint, the SEC asks us to go beyond reversal of summary judgment in his case and direct that he be permanently enjoined. We decline to do so; however, because, due to the fact that he has not directly participated in this appeal, we have insufficient information concerning his present circumstances to make such a ruling.

## APPENDIX

## COUNT II

*Violations of Section 10(b), Securities Exchange Act of 1934, as amended [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]—Fraud in the Purchase and Sale of Securities*

17. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16 of this complaint.

18. Since on or about January 1, 1970, the Defendants ZALE CORPORATION, SOL SHEARN ROVINSKY, JOSEPH D. UNDERWOOD and RONNIE JOE HICKERSON, by use of means and instrumentalities of interstate commerce and of the mails, have been, directly and indirectly employing a device, scheme and artifice to defraud, making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaging in acts, practices and a course of business which operates and would operate as a fraud and deceit upon certain persons in connection with the purchase and sale of certain securities, namely, the common and preferred stock and commercial paper issued by ZALE CORPORATION, in the manner and by the means set forth in paragraphs 19 and 20 herein, all in violation of Section 10(b) of the Securities Exchange Act of 1934, as amended [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

19. As a part of and in furtherance of the aforesaid conduct:

a. In early 1970, SOL SHEARN ROVINSKY devised a scheme for manipulating the financial records of ZALE CORPORATION for the purpose of evading federal income taxes.

b. The object of the manipulation was to cause the maximum corporate surtax exemption to appear to be available for each of ZALE CORPORATION's hundreds of subsidiaries which, prior to 1976, filed separate federal tax returns. It also had the effect of taking maximum advantage of net loss carry-forwards.

c. The scheme was accomplished by misallocating income and expenses between subsidiary corporations in the following ways:

1) Sufficient income was funnelled from operating stores into closed stores to take advantage of net loss carry-forwards and to take advantage of the surtax exemption;

2) Expenses of marginal stores were credited and charged to highly profitable stores;

3) Income and expense items which could be legally allocated among the various subsidiaries were manipulated to load the profitable stores with expense, while income was allocated to poor stores.

d. Procedures 1) and 2) set forth in paragraph c above were implemented by ROVINSKY making hand journal entries. In procedure 3), ROVINSKY was aided and abetted by JOSEPH D. UNDERWOOD and RONNIE JOE HICKERSON.

e. For the fiscal year ended March 31, 1970, the scheme was implemented by Rovinsky alone. For approximately three days during each year-end closing for the years 1971 through 1975, ROVINSKY, aided and abetted by UNDERWOOD and HICKERSON, in the procedure described in paragraph 19.c.3) above, acting together, would manually indicate on computer cards changes to be made in allocations of income and expense. The cards would then be returned to the data processing department where the indicated changes would be programmed into the computer.

f. As a result of the manipulative procedures described in paragraphs c, d, and e above which were instituted by ROVINSKY and carried out by him, and aided and abetted by UNDERWOOD and HICKERSON, in the procedure described in paragraph 19.c.3) above, the financial statements for ZALE CORPORATION included in its Form 10-K and Form 10-Q filings and proxy solicitations for

the period March 31, 1970 to February 1976 did not accurately reflect the true tax liability of ZALE CORPORATION, thereby causing earnings per share to be over-stated.

20. In connection with the device, scheme and artifice to defraud, the Defendants, ZALE CORPORATION and SOL SHEARN ROVINSKY, singly and in concert, aiding and abetting each other, as set forth in paragraph 19 above, and the Defendants, ZALE CORPORATION and SOL SHEARN KOVINSKY, aided and abetted by the Defendants, JOSEPH D. UNDERWOOD and RONNIE JOE HICKERSON, as set forth in paragraph 19.c.3) above, in connection with the purchase and sale of common and preferred stock and commercial paper issued by ZALE CORPORATION, omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, the following:

a. The financial records of ZALE CORPORATION were distorted as a result of the misallocation of income and expense items between subsidiary corporations.

b. The misallocations resulted in the understatement of federal income tax liability and the over-statement of earnings in the financial statements of ZALE CORPORATION.

c. ZALE CORPORATION subsidiaries filed federal tax returns which did not accurately reflect their taxable income or tax liability.

\*　　\*　　\*　　\*　　\*　　\*

## COUNT IV

*Violations of Section 13(a), Securities Exchange Act of 1934, as amended [15 U.S.C. § 78m(a)] and Rule 12b-20 thereunder [17 C.F.R. 240.12b-20]—Failure to Include Material Information in Periodical Reports*

23. Plaintiff re-alleges and incorporates by reference each and every allegation con-

tained in paragraphs 1 through 22 of this Complaint.

24. Since on or about January 1, 1970, the Defendant, ZALE CORPORATION, aided and abetted by SOL SHEARN ROVINSKY, JOSEPH D. UNDERWOOD and RONNIE JOE HICKERSON, has filed with the Plaintiff, SECURITIES AND EXCHANGE COMMISSION, forms 10–K, Forms 10–Q and Forms 8–K which failed to disclose material information necessary to make the required statements, in light of the circumstances under which they were made, not misleading, as set forth in paragraphs 19 and 20 of Count II of this Complaint.

\*　　\*　　\*　　\*　　\*　　\*

## COUNT VI

*Violations of Section 14(a), Securities Exchange Act of 1934, as amended [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. 240.14a-9]—Fraud in the Solicitation of Proxies*

27. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 26 of this Complaint.

28. Since on or about January 1, 1970, the Defendant, ZALE CORPORATION, aided and abetted by SOL SHEARN ROVINSKY, JOSEPH D. UNDERWOOD and RONNIE JOE HICKERSON, has by use of the mails and means and instrumentalities of interstate commerce, made solicitations by means of proxy statements to shareholders of ZALE CORPORATION, which proxy statements failed to disclose material facts necessary in order to make the statements therein not false or misleading, as set forth in paragraphs 19 and 20 of Count II of this Complaint.