**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,**

v.

**James H. RANDOLPH, Jr., and Charles Blackard, Defendants-Appellees.**

**No. 83–2070.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1984.

Decided June 29, 1984.

---

526

**527**

Linda D. Feinberg, SEC, Washington, D.C., for plaintiff-appellant.

Robert F. Watson, Law, Snakard & Gambill, P.C., Fort Worth, Tex., for defendants-appellees.

Before WISDOM,\* DUNIWAY, and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The Securities and Exchange Commission brought an action against James H. Randolph and Charles Blackard alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, for illegal insider trading. Simultaneous with the filing of the complaint, the parties filed a proposed consent decree. The district court, 564 F.Supp. 137, rejected the proposed decree and dismissed the action. We reverse.

## I. BACKGROUND

On October 5, 1981, a merger between Santa Fe International Corporation (Santa Fe) and Kuwait Petroleum Company (Kuwait) was announced. Kuwait's $51 per share tender offer caused the value of Santa Fe stock to rise from $24.75 on October 1 to $43.75 on October 6.

The SEC soon began an investigation into alleged insider trading in Santa Fe stock. Its investigation led it to believe that numerous individuals, including the defendants, traded on non-public insider information and reaped sizeable gains after the Kuwait offer for Santa Fe was announced. The purchase of call option contracts was one of the methods used to secure the greatest returns. Call options are highly speculative agreements in which the buyer acquires the right to purchase shares of the underlying security at a fixed price at a future date.

Randolph is a vice president of a Santa Fe subsidiary. Blackard is a former manager of the same subsidiary. The SEC's complaint alleged that during August and September of 1981 each of these individuals learned of the possibility of Kuwait's tender offer for Santa Fe. The complaint states that Randolph gave this information to his father-in-law, who purchased 65 call option contracts in September for $1,059.53. This investment returned a profit of $76,647 in October. The complaint also alleges that Blackard invested $1,940 in September and realized a profit of $40,060 in January, 1982.

After its investigation, the Commission negotiated a settlement with Randolph and Blackard. On the day the SEC filed its complaint, September 30, 1982, the defendants each filed a "Consent and Undertaking" in which they consented to the entry of permanent injunctions against future violations of the securities laws, agreed to disgorge the profits from the trading mentioned above, and agreed to cooperate in the SEC's continuing investigation of other insider trading in the Kuwait-Santa Fe merger. Proposed judgments incorporating the terms of the consents were also filed.

At two hearings in the fall of 1982, the district judge expressed reservations about entering the proposed decrees. Particularly, he was concerned with the lack of an appropriately severe sanction against Randolph and Blackard. The Commission's attempt to alleviate the court's concerns failed and on October 15, 1983, the court

---

\* The Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

denied the parties' motion to approve the judgment and dismissed the action.

The district court's opinion is reported at 564 F.Supp. 137 (N.D.Cal.1983). It held first that approval of the decree would not be in the public interest because the defendants were not required to pay prejudgment interest on the profits received. The court also held that, in any event, it could not enter the decree because there was no case or controversy.

The SEC filed a timely appeal. The defendants, Randolph and Blackard, chose not to participate in the appeal. Only the SEC briefed the issues.

## II. DISCUSSION

■ We address the case or controversy issue first because it is a threshold requirement for our, and the district court's, jurisdiction. We conclude the lower court erred in holding that no controversy existed because the parties arrived in court with the proposed judgment in hand.

The Supreme Court has long endorsed the propriety of the use and entry of consent judgments. *E.g., Swift & Co. v. United States,* 276 U.S. 311, 325–326, 48 S.Ct. 311, 314–315, 72 L.Ed. 587 (1928); *Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944); *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). In *Swift & Co.* the Court was presented with an issue very similar to the one in this case. Simultaneously with an antitrust complaint filed by the United States and answers filed by the defendants, the parties filed a proposed consent decree. The court entered the decree. Four years later, the defendants returned to court arguing that the decree was void for lack of case or controversy when it was entered. The Supreme Court upheld the decree, noting that, as here, the decree called for prospective injunctive relief which overcame the argument that the case had become moot prior to entry of the decree. 276 U.S. at 325–326, 48 S.Ct. at 314–315; *see also Dacanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir.1978) ("it is ... well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it").

■ We also disagree with the district court's statement that even if it had jurisdiction, it was unnecessary to exercise it because the parties could rely on their settlement agreement and bring a later action if one of the parties failed to abide by it. This reasoning neglects the contingent nature of the proposed decree; without court approval, the parties might claim the right to withdraw their consent to the agreement. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 87, 101 S.Ct. 993, 998, 67 L.Ed.2d 59 (1981); *cf. Collins v. Thompson,* 679 F.2d 168, 172–173 (9th Cir.1982) (judicial disapproval of a consent decree is a condition subsequent; where a party submits a proposed decree which is subsequently accepted by the other party, the parties are bound by the agreement unless the court fails to approve it). It also runs against the judicial recognition of the validity and efficacy of this procedure. *Carson,* 450 U.S. at 86–87, 101 S.Ct. at 997–998. The use of consent decrees encourages informal resolution of disputes, thereby lessening the risks and costs of litigation. *Id.; Dacanay,* 573 F.2d at 1078. A consent decree offers more security to the parties than a settlement agreement where "the only penalty for failure to abide by the agreement is another suit." *United States v. City of Miami,* 664 F.2d 435, 439 (5th Cir.1981) (en banc) (Rubin, J., concurring). A consent decree is a judgment, has the force of res judicata, and it may be enforced by judicial sanctions, including, as in this case, citations for contempt. *Id.* at 439–440.

For these reasons, we conclude that the district court erred in holding that it could not enforce the decree because there was no case or controversy and because the parties' contract remedies were available.

■ The district court also concluded that it should not approve the decree because it was not in the public's best inter-

est. It was not in the public interest, the court believed, because it did not impose severe enough sanctions against Randolph and Blackard. In particular, it did not require the defendants to pay prejudgment interest on the profits realized from trading Santa Fe stock. We sympathize with the district court's concern that insider trading should be met with appropriate sanctions. Nevertheless, we believe the district court used too strict a standard on which to condition its approval of the decree.

■ "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983) (citations omitted). This discretion is not unbridled, however. Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved. *Id.; see Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir.1983). Also, the courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment. *See Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir.1977); *Officers for Justice,* 688 F.2d at 625; *see also Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 689, 81 S.Ct. 1309, 1312, 6 L.Ed.2d 604 (1961).

■ The district court believed that the purposes of the securities laws and an analogous requirement in the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(e), required it to closely scrutinize the proposed decree to see if it was in the public's best interest. We do not question the appropriateness of a requirement that the decree be in the public interest. The purpose of the securities laws is to protect the public. *See United States v. Naftalin,* 441 U.S. 768, 775–776, 99 S.Ct. 2077, 2082–2083, 60 L.Ed.2d 624 (1979). As the agency given the responsibility of administering the securities laws, the SEC ought to always be required to serve the public interest.

That does not mean, however, the district court should have conditioned approval of the consent decree on what it considered to be the public's *best* interest. Instead, the court should have deferred to the agency's decision that the decree is appropriate and simply ensured that the proposed judgment is reasonable.

■ The primary civil remedy available to the SEC for a violation of the prohibition on insider trading is an injunction, 15 U.S.C. § 78u(d), although this provision has been interpreted liberally to provide for other forms of equitable relief. *E.g., Handler v. SEC,* 610 F.2d 656, 659 (9th Cir. 1979). In this case, the Commission was able to secure through defendants' consent an injunction against future violations, disgorgement of profits received, and cooperation in the continuing investigation of the Santa Fe-Kuwait merger. The only remedy arguably available that was not incorporated into the consent decree was the payment of approximately $8,000 in prejudgment interest on the profits. The failure to incorporate this sanction led the district court to believe that the decree was not in the public's best interest because it failed to have an adequate deterrent effect.

As the district court recognized, the "purpose of injunctive relief against violators of the securities laws is to deter future violations, not to punish the violators." *SEC v. Koracorp Industries, Inc.,* 575 F.2d 692, 697 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). We are unable to agree, however, that the payment of $8,000 in interest is so significant to the deterrent purpose of the SEC's injunctive remedy that the consent decree should not have been approved.

■ Compromise is the essence of a settlement. *Armour & Co.,* 402 U.S. at 681, 91 S.Ct. at 1757. Even if the Commission's case against Randolph and Blackard is strong, proceeding to trial would still be costly. The SEC's resources are limited, and that is why it often uses consent decrees as a means of enforcement. *See SEC v. Clifton,* 700 F.2d 744, 748 (D.C.Cir.

1983). The SEC is investigating other individuals who purportedly reaped much greater gains from insider trading in Santa Fe stock, and the SEC has ample reason to allocate more of its resources in those investigations. The agreement of Randolph and Blackard to cooperate in these investigations must also be considered. In addition, the disgorgement agreement required Randolph to return $76,647 realized not by him but by Minor, his father-in-law. Nowhere in the record before us is it indicated that Minor was to turn the profits over to Randolph. If not, this surely is a substantial penalty against Randolph. Any of these factors may have been worth $8,000 to the Commission.

For these reasons, we find that the consent decree should have been approved. The initial determination whether the consent decree is in the public interest is best left to the SEC and its decision deserves our deference. The provisions of the proposed decree have an adequate deterrent effect for it to be in the public interest. Accordingly, we reverse the judgment of the district court, with directions to enter the consent decree.

REVERSED.