UNITED STATES of America and
the State of Texas, Plaintiffs,

v.

David Bowen WALLACE,
et al., Defendants.

Civ. A. No. 3:93–CV–0838–P.

United States District Court,
N.D. Texas,
Dallas Division.

July 17, 1995.

Katherine Savers McGovern, Dallas, TX, Michael C. Barra, Dallas, TX, Richard Hayden Stephens, Fort Worth, TX, Katherine A. Dreyfus, Washington, DC, Gary Fox, Washington, DC, Richard Gladstein, Washington, DC, Myles E. Flint, Washington, DC, Paul J. Schaeffer, Washington, DC, Ronald M. Sprizter, Washington, DC, Leslie David Romo, Austin, TX, Mehron Azarmehr, Austin, TX, Paul Matthews Terrill, III, Austin, TX, Albert M. Bronson, Austin, TX, for plaintiffs.

Thomas E. Shaw, Dallas, TX, Timothy A. Vanderver, Jr., Washington, DC, Paul A.J. Wilson, Washington, DC, David Patrick Long, Dallas, TX, Werner Anthony Powers, Dallas, TX, Kay Michele Crider, Dallas, TX, William Michael Byrd, Jr., Dallas, TX, Kathleen McElroy LaValle, Dallas, TX, Thomas L. Cantrell, Dallas, TX, Earl F. Hale, Dallas, TX, Charles C. Jordan, Dallas, TX, Daniel White Shieder, Jr., Dallas, TX, Freeman Lee Mittenthal, Dallas, TX, Mark Malveaux, Dallas, TX, Charles Turner, Chicago, IL, David E. Ross, Cincinnati, OH, Timothy R. McCormick, Dallas, TX, James W. Moorman, Washington, DC, Elizabeth T. Van Horn, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are:

1. United States' Motion for Entry of Consent Decree and brief in support thereof, filed November 30, 1994;

2. State of Texas' (TNRCC) Motion for Entry of Consent Decree and brief in support thereof, filed December 16, 1994;

3. Response and Joinder of Settling Defendants to United States' Motion for Entry of Consent Decree, filed December 13, 1994;

4. Opposition of Defendants United Technologies Corporation and CTU of Delaware, Inc. to United States' Motion for Entry of Consent Decree, filed December 19, 1994;

5. Response in Opposition to Defendants United Technologies Corporation and CTU

of Delaware, Inc. to Response and Joinder of Settling Defendants to United States' Motion for Entry of Consent Decree, filed January 5, 1995;

6. Opposition of Defendants United Technologies Corporation and CTU of Delaware, Inc. to State of Texas' Motion for Entry of Consent Decree, filed January 6, 1995;

7. United States' Reply to Opposition of Defendants United Technologies Corporation and CTU of Delaware, Inc. to Motion for Entry of Consent Decree, filed January 12, 1995; and

8. Settling Defendants' Reply to Response in Opposition to Defendants United Technologies Corporation and CTU of Delaware, Inc. to Response and Joinder of Settling Defendants to United States' Motion for Entry of Consent Decree, filed January 20, 1995.

Upon review of the motions, the supporting and opposing memoranda, and the applicable law, the Court finds the motions for entry of the consent decree should be **GRANTED.**

## BACKGROUND

Bio–Ecology Systems, Inc. operated a waste treatment and disposal facility at the Bio–Ecology Systems Superfund Site ("Site") in Grand Prairie, Texas, from 1972 to 1978. By agreement between the Environmental Protection Agency ("EPA") and the State of Texas ("State"), a Remedial Investigation and a Feasibility Study was performed during 1982, 1983, and 1984, documenting the presence of numerous hazardous waste substances at the Site. The release or threatened release of the hazardous substances from the Site posed a substantial hazard to the public health, welfare and the environment, warranting remedial action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et al. ("CERCLA").

The United States of America ("United States") filed this case, pursuant to CERCLA, 42 U.S.C. § 9607, to recover costs incurred in responding to the releases or threatened releases of hazardous substances from the Site. The State also filed suit, pursuant to CERCLA, 42 U.S.C. §§ 9604 and 9607, for the recovery of costs incurred for the remedial action at the Site, which case was previously consolidated herewith. The United States and the State seek recovery from the parties responsible for contributing the hazardous substances to the Site. The defendants filed cross-claims and counterclaims against the United States, pursuant to CERCLA, 42 U.S.C. § 9607, alleging the U.S. Air Force ("USAF"), the Drug Enforcement Agency ("DEA"), and the Small Business Administration ("SBA") were jointly and severally liable for response costs at the Site. Further, the defendants filed a third party complaint against the State, alleging the Texas Department of Agriculture ("TDA") and the University of Texas at Dallas ("UTD") were jointly and severally liable for response costs and seeking contribution under CERCLA, 42 U.S.C. § 9613(f).

The United States initiated settlement negotiations with the defendants, including the federal and state agencies, each represented by independent counsel. After months of arms-length, good faith settlement negotiations, seventy three (73) of the defendants ("Settling Defendants"), the federal agencies ("Settling Federal Agencies"), and the state agencies ("Settling State Agencies") lodged a proposed consent decree ("Consent Decree") with the Court and published a notice of lodging in the Federal Register on August 12, 1994, for the thirty (30) day public comment period pursuant to CERCLA, 42 U.S.C. § 9622(i). The only comments submitted were the comments in opposition by nonsettling defendants, United Technologies Corporation and CTU of Delaware, Inc. ("Defendants"). Defendants also submitted additional comments in opposition to the Consent Decree upon the Court's grant of an extension of the comment period. Following the Department of Justice's review of the comments submitted by Defendants and determination that the proposed settlement was appropriate, proper and adequate, the United States filed the instant motion for approval and entry of the Consent Decree.

## APPLICABLE LAW

The Supreme Court has long endorsed the propriety of the use and entry of consent

judgments. *SEC v. Randolph,* 736 F.2d 525, 528 (9th Cir.1984) (*citing Swift & Co. v. United States,* 276 U.S. 311, 325–26, 48 S.Ct. 311, 314–15, 72 L.Ed. 587 (1928); *Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944); *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971)). "It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement." *Armstrong v. Board of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 312 (7th Cir.1980) (citations omitted); *see also United States v. Cannons Engg. Corp.,* 899 F.2d 79, 84 (1st Cir.1990) ("... it is the policy of the law to encourage settlements.") (*citing Donovan v. Robbins,* 752 F.2d 1170, 1177 (7th Cir.1985); *City of New York v. Exxon Corp.,* 697 F.Supp. 677, 692 (S.D.N.Y.1988)). Consent decrees provide informal resolution of disputes, thereby lessening the risks and costs of litigation, as well as providing more security to the parties than a settlement agreement where "the only penalty for failure to abide by the agreement is another suit." *SEC v. Randolph,* 736 F.2d 525, 528 (9th Cir.1984) (*citing Carson v. American Brands, Inc.,* 450 U.S. 79, 87, 101 S.Ct. 993, 998, 67 L.Ed.2d 59 (1981); *Dacanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir.1978); *United States v. City of Miami,* 664 F.2d 435, 439 (5th Cir.1981) (en banc) (Rubin, J., concurring)).

CERCLA specifically provides for the use of consent decrees to encourage potentially responsible persons ("PRPs") "to contribute to cleanup costs and/or to undertake response activities themselves." *United States v. Cannons Engg. Corp.,* 899 F.2d 79, 85 (1st Cir.1990). The Department of Justice is authorized to settle claims brought under section 9607 for costs incurred by the United States. 42 U.S.C. § 9622(h). "We believe that Congress intended, first, that the judiciary take a broad view of proposed settlements, leaving highly technical issues and relatively petty inequities to the discourse between parties; and second, that the district courts treat each case on its own merits, recognizing the wide range of potential problems and possible solutions." *Id.* at 85–86.

■ The district court reviewing a proposed consent decree formulated pursuant to CERCLA should ensure that the settlement protects public health and the environment to the greatest extent possible under currently existing technology. *United States v. Hooker Chems. & Plastics Corp.,* 540 F.Supp. 1067, 1073 (W.D.N.Y.1982). Accordingly, the court should review the proposal to determine whether the consent decree is fair, reasonable, and faithful to the objectives of CERCLA. *See Id.; United States v. Cannons Engg. Corp.,* 899 F.2d 79, 84 (1st Cir. 1990) (*citing Durrett v. Housing Authority,* 896 F.2d 600 (1st Cir.1990)); *SEC v. Randolph,* 736 F.2d 525, 529 (9th Cir.1984) (citations omitted) ("Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved."); *United States v. Cannons Engg. Corp.,* 899 F.2d 79, 85 (1st Cir.1990) (*citing* H.R.Rep. No. 253, Pt. III, 99th Cong., 1st Sess. 19 (1987), reprinted in 1986 U.S.Code Cong. & Admin. News 2835, 3038, 3042).

■ Approval by state and federal agencies which are charged with the implementation and review of the various environmental protection statutes carries with it a strong presumption of the validity of the proposed consent decree. *United States v. Hooker Chems. & Plastics Corp.,* 540 F.Supp. 1067, 1080 (W.D.N.Y.1982).

> The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency 'specially equipped, trained or oriented in the field....' *United States v. National Broadcasting Co.,* 449 F.Supp. 1127, 1144 (C.D.Cal.1978). EPA is such an agency.

*United States v. Cannons Engg. Corp.,* 720 F.Supp. 1027, 1035 (D.Mass.1989). The district court "is not to substitute its judgment for that of the parties to the decree." *United States v. Hooker Chems. & Plastics Corp.,* 540 F.Supp. 1067, 1072 (W.D.N.Y.1982) (*citing United States v. City of Jackson,* 519 F.2d 1147, 1151 (5th Cir.1975)). Neither is the court's analysis to be so specific as to amount to a judgment on the merits. *Armstrong v. Board of Sch. Dirs. of Milwaukee,*

616 F.2d 305, 315 (7th Cir.1980) (*citing Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (1974)). However, "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, [stopping] short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Armstrong v. Board of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314–315 (7th Cir.1980) (*citing Dawson v. Pastrick*, 600 F.2d 70, 75–76 (7th Cir.1979)); *see also United States v. Cannons Engg. Corp.*, 899 F.2d 79, 84 (1st Cir.1990) ("While the district court should not mechanistically rubberstamp the agency's suggestions, neither should it approach the merits of the contemplated settlement de novo.").

## DISCUSSION

### I. Fairness

■ The Court's analysis of the Consent Decree for fairness includes both procedural and substantive aspects. Fairness is surveyed from the standpoint of both settling and non-settling defendants alike, however, the effect on non-settlers is not determinative in the Court's evaluation. *United States v. Cannons Engg. Corp.*, 720 F.Supp. 1027, 1040 (D.Mass.1989) (citations omitted).

### A. Procedural Fairness

■ The Court considers the negotiation process in its examination of procedural fairness, weighing factors of candor, openness, and bargaining balance. *United States v. Cannons Engg. Corp.*, 899 F.2d 79, 86 (1st Cir.1990). Defendants do not contest the issue of procedural fairness, however, the Court examined the issue on behalf of the public's interest in complete remediation and continued protection from future contamination.

The record shows all defendants were afforded ample opportunity to participate in the negotiations which produced the Consent Decree. Coupled with the arms length settlement negotiations conducted in good faith by experienced legal counsel representing each defendant, the Court's finding of procedural fairness is clearly supported.

### B. Substantive Fairness

■ Substantive fairness encompasses the concepts of corrective justice and accountability; "a party should bear the cost of the harm for which it is legally responsible." *United States v. ASARCO, Inc.*, 814 F.Supp. 951, 954 (D.Colo.1993) (*citing Cannons*, 899 F.2d at 87). "[S]ettlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational ... estimates of how much harm each PRP has done." *United States v. Cannons Engg. Corp.*, 899 F.2d 79, 87 (1st Cir.1990). Where the court finds the EPA's use of available data to apportion liability for purposes of a consent decree falls along the broad spectrum of plausible approximations, judicial intrusion is unwarranted. *Id.* at 88.

Defendants urge the Court to deny the motion for entry of the Consent Decree based on a lack of substantive fairness. Defendants argue (1) the terms of the Consent Decree are not based upon a rational measure of apportioning liability and determining comparative fault; (2) the United States and the State of Texas are attempting to provide themselves with an unfairly favorable settlement; and (3) the outstanding issues of divisibility of harm make it uncertain that the remedial action will be fully funded by those allegedly responsible, thus making the United States' and the State of Texas' limit of their own liability inappropriate. OPPOSITION OF UTC AND CTU TO MOTION FOR ENTRY OF CONSENT DECREE, at 1.

#### 1. Rational Apportionment of Liability

Defendants rely most heavily on *United States v. Pesses, et al.*, 1994 WL 741277 (W.D.Pa.), to support their objection that the terms of the Consent Decree are not based upon a rational measure of apportioning liability and determining comparative fault. Defendants' reliance is misplaced.

In *Pesses*, the United States ("plaintiff") sought to recover "costs it incurred in response to an alleged release or threatened release of hazardous substances at the Metcoa Radiation site located in Pulaski, Pennsylvania." *Id.* at * 1. The court in *Pesses*

found that the plaintiff failed to establish that the present allocation of the federal agencies' responsibility as to all past and future liability was reasonable and equitable in relation to the other responsible persons. *Id.* at *15. The court implicitly held the government should have included an evaluation of the relative toxicity, migratory potential, and synergistic capacity of the wastes sent by the various parties and the settling federal agencies. *Id.* at *16.

Defendants urge the Court to require the United States to include in its determination of a reasonable basis for apportionment the same factors, not volume alone. The Court declines Defendants' invitation to look to the factors listed in *Pesses* for guidance in its decision on substantive fairness of the Consent Decree.

■ "The argument that the EPA should have used relative toxicity as a determinant of proportionate liability for response costs, instead of a strictly volumetric ranking, is a stalking horse." *United States v. Cannons Engg. Corp.,* 899 F.2d 79, 88 (1st Cir.1990). As the court in *Cannons* found, the EPA is not required to show that it has chosen the best or even the fairest method of apportioning liability, but that it is reasonable. Further, "[t]he choice of the yardstick to be used for allocating liability must be left primarily to the expert discretion of the EPA, particularly when the PRP's involved are numerous and the situation is complex." *Id.*

The volumetric method utilized the Waste–In List prepared by the EPA for the Site to apportion the liability of each potentially responsible party. *See* PLAINTIFF'S EXHIBIT 7. The Waste–In List is a result of the compilation of data gathered by the EPA which includes responses to information requests from potentially responsible parties, Bio–Ecology business records, and Industrial Waste Manifests required by the State of Texas. *See* PLAINTIFF'S EXHIBIT 6 (Declaration of Diana W. Hinds). The United States then applied the chosen volumetric formula consistently to all defendants. To arrive at a PRP's volumetric share, the EPA used the estimates from the Waste–In List to derive a ratio of the volume of wastes sent to the Site over the total amount of wastes sent there.

The fact that seventy-three (73) defendants accepted the allocation of contribution based on a volumetric formula suggests the chosen method is fair.

■ Comparative fault is a factual determination, the best measure of which should be chosen by the EPA based upon their expertise. *Cannons,* 899 F.2d at 87. The Court must uphold the agency's choice of the volumetric formula "so long as the agency supplies a plausible explanation for it, welding some reasonable linkage between the factors it includes in its formula or scheme and the proportionate shares of the [settling parties]." *Id.*

The Court finds the United States reasonably relied on the volumetric formula for apportioning liability among the defendants.

2. The SBA

■ Defendants object to the United State's determination that SBA is not an owner or operator of the Site but that SBA acted primarily to protect its security interest in the facility. The definition section of CERCLA states the term "[owner or operator] does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). The party seeking to invoke the exemption, bears the burden of establishing its entitlement thereto. *United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1555 (11th Cir.1990).

It is not disputed that SBA held an indicia of ownership to protect its security interest in the Site. The dispute presented to the Court is over the interpretation of the phrase "participating in the management." Relying on *United States v. Fleet Factors Corp.,* Defendants argue SBA should be held liable as an owner or operator because it participated in the financial management of the Site to a degree suggesting that it had actual or potential ability to influence or control hazardous waste disposal decisions. 901 F.2d 1550, 1557–58 (11th Cir.1990). The United States asserts that actual participation in the management of facility operations is required to

preclude a secured creditor from the exemption and establish liability.

Upon review of current case law and in the absence of specific legislative guidance, the Court determines that "participating in management" should be interpreted as participation in the day-to-day or operational management of the hazardous waste treatment and disposal systems. *Fleet Factors*, 901 F.2d at 1557. Participation includes the authority to insist upon compliance with acceptable treatment standards, as well as activities of investigation and amelioration of hazardous waste problems. *Id.* at 1558–1559. Additionally, in the absence of participation in day-to-day management activities, a secured creditor may lose its exemption status where the evidence shows financial involvement to a degree indicating a capacity to influence the corporation's treatment of hazardous wastes. *Id.* However, a secured creditor will not lose its exemption status merely because of a site assessment, "even one which reveals the existence of possible environmental contamination." *Northeast Doran, Inc. v. Key Bank of Maine*, 15 F.3d 1, 3 (1st Cir.1994) (*citing Waterville Indus., [Inc. v. Finance Auth. of Maine,]* 984 F.2d [549, 552 (1st Cir.1993) ].)

Defendants argue that SBA's hiring of financial and technical consultants is evidence of SBA's participation in management. *See* DEPOSITION OF JOHN T. LURCOTT, at 104; DEPOSITION OF MARSHALL DAVIDSON, at 65–77. Davidson acknowledged that SBA provided consultants, however, he specifically stated "[i]t was left up to the management of the— of the business to either initiate the suggestions or—or leave them. . . ." DEPOSITION OF MARSHALL DAVIDSON, at 65–78. Defendants argue further that SBA's authority to (1) limit capital expenditures on new waste treatment equipment, (2) limit certain employee raises and bonuses, (3) approve dividends to shareholders, and (4) control voting shares of stock evidences activities of participation in the management of the Site.

The Court disagrees. The reservation of certain rights to protect its investment, the monitoring of any aspect of a debtor's business, and involvement in occasional and discrete financial decisions relating to the protection of its security interest does not equate with participation in the management. *See Kemp Industries, Inc. v. Safety Light Corp.*, 857 F.Supp. 373 (D.N.J. 1994) (*citing In re Bergsoe Metal Corp.*, 910 F.2d 668, 672 (9th Cir.1990)); *Fleet Factors*, 901 F.2d at 1558. Evidence in the record supports the United States' assertion that SBA, although it acted to protect its security interest, never participated in the management of the Site. Therefore, the Consent Decree reasonably includes the settlement of any alleged liability of SBA with the settling parties.

### 3. "Sweetheart Deals"

Defendants also argue a more exacting scrutiny of the consent decree as outlined in *United States v. Moore*, 703 F.Supp. 455, 459 (E.D.Va.1988), is appropriate because the United States and the State have made "sweetheart deals" with the Settling Federal Agencies and the Settling State Agencies. The court in *Moore* declined to approve the entry of the consent decree which represented a settlement between two federal agencies. The court closely scrutinized the consent decree in all respects, especially noting that CERCLA was not intended to govern settlements between agencies but between defendants and the United States. Additionally, the court noted that the settling parties in *Moore* failed to comply with the procedural requirements of CERCLA, unlike the parties now before the Court. Clearly, *Moore* is distinguishable from this case which involves a settlement between (1) settling federal and state agency defendants, (2) settling private defendants, and (3) the United States and the State of Texas; a settlement for which CERCLA specifically provides guidance, enforcement and protection.

### 4. Divisibility of Harm

Defendants repeat their arguments that toxicity and divisibility of harm remain to be considered, thus, the Court should deny the United States motion. The non-settling defendants receive substantively fair treatment under the Consent Decree where their liability would be reduced from the alleged 23% to an alleged 14% of responsibility for response

costs. Further, as the First Circuit noted in *Cannons,* apportionment of liability among parties should be based on rational estimates of how much harm each PRP has done. At this state of the proceedings, these estimates are necessarily imprecise. However, the EPA and the Settling Defendants have agreed on a formula for apportioning harm which is rational and plausible in light of the facts known at this time.

The Court is not swayed by Defendants arguments that they are not liable and should, therefore, not be required to pay even 14% of the response costs. Clearly, the issues of liability and toxicity are to be addressed in later proceedings before this Court; objections to the Consent Decree is not the appropriate avenue for argument on these concerns.

### 5. Contribution Protection

Defendants express additional concern that the settling federal and state agencies receive contribution protection under the Consent Decree. In its memorandum in support of this motion, the United States argues contribution protection appropriately includes the settling state and federal agencies because they are "persons" within the meaning of 42 U.S.C. § 9613(f)(2).

CERCLA specifically provides contribution protection for persons resolving their liability to the United States in a cost recovery action to encourage settlement by providing "an increased measure of finality to settlements." *See* 1986 U.S. Code Cong. & Admin. News 2835, 2862. "Person" is defined by 42 U.S.C. § 9601(21) as "... [the] United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." Also, section 9620 requires "[e]ach department, agency, and instrumentality of the United States [to be subject to] this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability...." 42 U.S.C. § 9620(a)(1). Accordingly, the Court finds the Settling Federal Agencies and the Settling State Agencies, perspicuously held accountable for their actions under CERCLA, are entitled to contribution protection afforded to settling persons.

The Consent Decree is fair, both procedurally and substantively.

### II. REASONABLENESS

■ In determining whether or not a consent decree satisfies the reasonableness requirement, the Court reviews the Consent Decree in light of the following factors:

1. the nature and extent of the hazards at the site;
2. the degree to which the remedy provided for in the consent decree will adequately address the hazards present at the site;
3. the possible alternative approaches for remedying the hazards at the site;
4. the relative strength of the parties' litigating positions, taking into account foreseeable risks of loss; and
5. whether the settlement satisfactorily compensates the public for the actual and anticipated costs of remedial and response measures.

*See United States v. Cannons Engg. Corp.,* 720 F.Supp. 1027, 1038 (D.Mass.1989) (*citing United States v. Conservation Chemical Co.,* 628 F.Supp. 391, at 401); *United States v. Cannons Engg. Corp.,* 899 F.2d 79, 89–90 (1st Cir.1990).

The first three factors are properly not contested as the evidence presented to the Court shows the remedy has been completely and fully implemented. No party objects to and the Court does not doubt each party's bargaining position. Each party engaged legal counsel to fully represent its interests in the settlement negotiation process. It is the fifth factor of reasonableness, as listed above, upon which Defendants base their objection to the reasonableness of the Consent Decree. Defendants again argue that the remaining issues of divisibility bar the entry of this decree because a finding that Defendants are not liable would result in the United States not collecting the 14% of response costs sought from Defendants. Thus, Defendants urge the Court to find the Consent Decree is not reasonable because it does not ensure

that the public will be adequately compensated.

Unequivocally, the goals of CERCLA which encourage early settlement to avoid costly litigation refute Defendants' arguments. The potential risk of the United States, ergo the public, that it would incur exorbitant legal costs in litigating the issues resolved by the Consent Decree against the 73 settling Defendants and the risk of loss of the contributions by each of the Settling Defendants greatly outweighs the risk of a 14% loss in the event Defendants prevail at trial on the liability and divisibility issues. Thus, the Court finds the Consent Decree is reasonable.

III. CONSISTENCY WITH GOALS OF CERCLA

■ The two primary, underlying policy concerns of CERCLA are (1) Congress' desire to equip the federal government with tools necessary for prompt and effective responses to hazardous waste disposal problems of national magnitude and (2) Congress' desire that those responsible for causing the problems thus identified bear the costs and responsibility for remedying the harmful conditions they created. *United States v. Cannons Engg. Corp.*, 899 F.2d 79, 90–91 (1st Cir.1990). More simply stated the goals of CERCLA include accountability, desirability of unsullied environment, and promptness of response activities.

■ As the court stated in *Cannons*, a consent decree is consistent with the goals of CERCLA where the government has properly identified the potentially responsible persons and apportioned liability using a method reasonably related to assuring accountability and "the technical efficacy of the selected remedial measures is not in issue." *United States v. Cannons Engg. Corp.*, 899 F.2d 79, 91 (1st Cir.1990).

Defendants do not specifically address the goals as outlined but merely refer to previous arguments relating to fairness and reasonableness as their arguments that the Consent Decree fails the consistency prong of the Court's analysis. No one contests the effectiveness of the remedial measure utilized and

devised for continuing maintenance of the Site. The Court's findings against Defendants' arguments on the issues of fairness and reasonableness implicitly negate Defendants' arguments of inconsistency with the goals of CERCLA. The Consent Decree is patently consistent with the goals of CERCLA.

### CONCLUSION

The evidence presented to the Court amply supports the determination that the proposed Consent Decree is fair, reasonable, and consistent with the goals of CERCLA. Accordingly, the Court finds the United States', the State of Texas', and the Settling Defendants' motions for entry of the Consent Decree should be granted.

IT IS THEREFORE ORDERED that the Consent Decree shall be filed as of the date of this Order.

**SO ORDERED.**