SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

The GLOBUS GROUP, INC., et al., Defendants.

No. 99–1968–CIV.

United States District Court, S.D. Florida.

Oct. 4, 2000.

---

Andres Guevara, Leslie Hendrickson, Hughes, Denver, CO, for plaintiff.

Jacques Verhaak, Des Plaines, IL, Herbert Jacobi, New York City, for defendants.

**ORDER GRANTING MOTION TO RECONSIDER, DENYING MOTION FOR INJUNCTIVE RELIEF, GRANTING MOTION TO WITHDRAW SETTLEMENT, AND VACATING FINAL JUDGMENT AGAINST CHINA FOOD & BEVERAGE COMPANY, TRANS–GLOBAL HOLDINGS INC., AND JAMES TILTON**

JORDAN, District Judge.

On August 11, 2000, I entered an order pursuant to a settlement agreement among the Securities and Exchange Commission and defendants China Food & Beverage Company, Trans–Global Holdings, and James Tilton [D.E. 44]. Despite the parties' agreement that an injunction should issue, I found that injunctive relief was not an available remedy under the facts of this case. The SEC now moves for reconsideration of that decision and asks that I grant it the injunctive relief or in the alternative allow the parties to withdraw the settlement. The motion to reconsider [D.E. 48], filed August 25, 2000, is GRANTED. For the reasons that follow, the motion for injunctive relief is DENIED. The motion to withdraw the settlement is GRANTED. The final judgment against these defendants [D.E. 46] is VACATED pursuant to Federal Rule of Civil Procedure 60(b) as I was mistaken in assuming that the parties would accept a settlement that did not entail an injunction. All parties shall file an updated joint scheduling report pursuant to Local Rule 16.1 by no later than October 20, 2000.

■ Unlike traditional equitable injunctions, statutory injunctions, such as those that may issue under the securities laws, may prohibit conduct that is already illegal. *See SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1321 (11th Cir.1982). This makes it possible to punish repeat violators of the securities laws through contempt sanctions without the trouble of initiating a new lawsuit. *See Chandler v. James,* 180 F.3d 1254, 1273 n. 18 (11th Cir.1999) (Tjoflat, J., concurring), *vacated on other grounds sub nom. Chandler v. Siegelman,* —— U.S. ——, 120 S.Ct. 2714, 147 L.Ed.2d 979 (2000). Thus, unlike the other relief that the parties' settlement agreement provides—disgorgement of profits and a fine—injunctive relief is unique in that it contemplates a continuing role for the court and creates a short-cut to the normal process by which punishment for violations of the securities law may be imposed.

■ The statutes authorizing injunctions to prevent future securities laws violations require the SEC to make a "proper

showing" to obtain injunctive relief. 15 U.S.C. §§ 77t(b) & 78u(d)(1). As noted in the previous order, the Eleventh Circuit has held that an injunction can issue pursuant to the securities laws when the SEC establishes both a *prima facie* case of past securities law violations and a reasonable likelihood that the wrong will be repeated absent the injunction. *See SEC v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 n. 2 (11th Cir.1999). In deciding whether there is a reasonable likelihood of future violations, courts consider the egregiousness of the defendants' actions, the nature of the offense, the scienter exhibited, and the degree to which the defendants acknowledge the wrongfulness of their misdeeds. *See SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 16, 1981).

■ Assuming the SEC's allegations to be true, I indicated in the prior order that China Food & Beverage Company, Trans–Global Holdings, and Mr. Tilton engaged in isolated, as opposed to recurrent, violations of the securities laws. Specifically, over a period of about one month, they publicized fraudulent press releases touting their stocks. *See* Complaint ¶ 3. These press releases were written by another defendant, Bruce Gorcyca. *See id.* The SEC essentially agrees with this assessment, but is more emphatic in its characterization:

> [T]here is ample evidence to support a finding that China Food and Tilton engaged in an egregious attempt to fraudulently increase the price and volume of trading in China Food stock by issuing false press releases over a ninety-day period. The defendants acted with scienter by failing to perform due diligence before distributing the press releases drafted by Mr. [Bruce] Gorcyca.

Motion to Reconsider at 4–5 (similarly also describing Trans–Global's alleged conduct). Furthermore, the defendants demonstrated contrition by agreeing to pay a fine or to cooperate with the SEC in other investigations. Accordingly, I held that, under the governing precedent, injunctive

relief was not an available remedy against them.

The SEC argues that I "abused [my] discretion by making findings about future likelihood of violations" and insists that an injunction may issue "upon a single violation" of the securities laws. Motion to Reconsider at 3. This argument lacks merit. The *Zale* opinion makes it clear that not only do I have the authority to make findings regarding the likelihood of future violations, I am in fact required to do so:

> Although the mere fact of a past violation does not *ipso facto* establish the SEC's right to injunctive relief, and thus is not alone tantamount to the "proper showing" of present or future violations, the Commission is entitled to prevail when the inference flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a "reasonable likelihood" of future transgressions.

650 F.2d at 720 (collecting cases). Contrary to the SEC's contention, its motion for a preliminary injunction and the supporting documents do not evidence any likelihood that China Food & Beverage Company, Trans–Global Holdings, or Mr. Tilton will commit future violations of the securities laws. Rather, the great mass of that motion, the two memoranda supporting it, and the 800–plus pages of exhibits are directed at establishing the violations committed by Mr. Gorcyca and The Globus Group. An injunction has accordingly been entered against these defendants. *See* Modified Final Default Judgment [D.E. 47] (Aug. 11, 2000). The mere fact that "Mr. Tilton is the president of China Food, a publicly traded company, which continues to publish and distribute press releases," Motion to Reconsider at 4, is hardly a cause for alarm, but rather reassures one of the continued vitality of the First Amendment. If a defendant's continued employment or participation in a publicly traded company sufficed to warrant injunctive relief, a drastic remedy

**1348**

would be improperly transformed into an ordinary one.

The cases on which the SEC relies do not support its position. For example, the SEC, relying on *SEC v. Randolph,* 736 F.2d 525, 529 (9th Cir.1984), argues that I should defer to its determination that injunctive relief is warranted. *See* Motion to Reconsider at 1–2. In *Randolph,* the Ninth Circuit held that the district court should have approved a consent judgment that it rejected on the ground that the punishment agreed to by the SEC was not harsh enough. *See* 736 F.2d at 529. Specifically, the district court rejected the proposed consent judgment because it did not require the defendants to pay about $8,000 in prejudgment interest and therefore did not have a sufficient deterrent effect. *See id.* The Ninth Circuit disagreed, noting that there were several good reasons why the SEC might not have sought the additional $8,000 sanction. *Randolph* therefore holds that the SEC is entitled to some deference as to whether certain penalties for previous violations of the securities laws are in the public interest. *See id.* at 730.

■ Whether a court should issue an injunction under § 77t(b) or § 78u(d)(1) that would punish future violations under its contempt power is a completely different matter. The SEC has no particular expertise in determining whether a proper showing has been made to support an injunction under the law. Rather, the SEC's legal opinions "are 'entitled to respect' ... but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 1663, 146 L.Ed.2d 621 (2000) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). In contrast to the factual issue in *Randolph* regarding what penalty would sufficiently deter those particular defendants from further violations, questions relating to the sufficiency of the evidence presented and its legal significance are within the peculiar expertise of the federal judiciary. The SEC is not entitled to deference on such questions:

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Accord Immigration & Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 446–47,· 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

As *Zale* and the other case on which the SEC relies, *Mitchell v. Pidcock,* 299 F.2d 281 (5th Cir.1962), make clear, the former Fifth Circuit has repeatedly held that an injunction issues under the securities laws only after the district court is persuaded that a proper showing has been made. In *Mitchell,* the Fifth Circuit held that the district court's decision not to enjoin an individual defendant who violated the Fair Labor and Standards Act from committing future violations abused its discretion. The holding in that case was based entirely on the flagrant and obvious violation of law that the defendant committed in refusing to pay his employees the minimum wage for about two years. *See* 299 F.2d at 282–83 & n. 2. The defendant purported to rely on an attorney's opinion letter as reason for not obeying the law, but the Fifth Circuit found that claim to be specious: "We find it incredible that in 1958 an informed, knowledgeable, experienced tobacco warehouseman would have accepted the opinion ... and continued to rely on it. The defendants do protest too much." *Id.* at 287. Thus, the offense in *Mitchell* was committed over an extended period and caused direct financial injury during that time to the cheated employees. Moreover, the defendants presented a completely

transparent defense, to which the Fifth Circuit apparently took some offense, and exhibited no contrition or acknowledgment of the wrongfulness of their actions. The Fifth Circuit's later enumeration in *Zale* of the relevant factors for determining whether a statutory injunction should issue is in complete accord with the opinion in *Mitchell.* Moreover, *Mitchell* hardly stands for the proposition that it is an always an abuse of discretion to refuse to enter an injunction when a government agency requests one. Rather, the Fifth Circuit emphasized the contrary: "[T]he decision whether to issue an injunction against further violations rests primarily in the discretion—judicial discretion—of the trial court." *Id.* at 287. "We do not say or imply that injunctions should be issued freely, without regard for the facts, simply because it is the government asking for the injunction." *Id.* at 287 (emphasis in original).

In short, federal courts do not merely rubber-stamp the SEC's requests for statutory injunctions but, rather, must exercise independent judgment to determine whether the SEC has made a "proper showing." *See, e.g., SEC v. American Board of Trade, Inc.,* 751 F.2d 529, 537 (2d Cir.1984) (reversing injunction as abuse of discretion where evidence did not support finding of likelihood of future violations); *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 99–101 (2d Cir.1978) (noting that "collateral consequences of an injunction can be very grave" and sustaining injunction as to some defendants but vacating as to two others with respect to whom no reasonable likelihood of future violation was shown). In this case, there is insufficient evidence to support a finding that China Food & Beverage Company, Trans–Global Holdings, and Mr. Tilton are reasonably likely to commit future transgressions. Moreover, the parties' consent to an injunction does not obviate the need for the "proper showing" that the law requires. I understand that China Food and Mr. Tilton join in the SEC's motion for injunctive relief, *see* Motion to Reconsider at 1, and that the parties presumably desire to put this case to rest and spare themselves the trouble and expense of a trial. However, a court that issues an injunction that is not supported by a proper showing purports to exercise power it does not have and risks creating the potential for a due process violation down the road. *Cf. National Petroleum Refiners Ass'n v. FTC,* 482 F.2d 672, 703 n. 17 (D.C.Cir.1973) (noting one senator's observation that proposed statute that could be construed as requiring courts to rubber-stamp agency requests for injunctions might infringe on due process rights).

For these reasons, I cannot acquiesce in the parties' insistence on an unwarranted injunction.